**Erwin JACKSON, Petitioner–Appellant,**

v.

**Arthur LEONARDO, Superintendent of Great Meadow Correctional Facility, Respondent–Appellee.**

**Docket No. 96–2984.**

United States Court of Appeals, Second Circuit.

Argued Sept. 25, 1998.

Decided Dec. 3, 1998.

Mark Diamond, New York, NY, for Petitioner–Appellant.

Lawrence J. Schwartz, Assistant District Attorney, on behalf of Denis Dillon, District Attorney of Nassau County, New York (Tammy J. Smiley, Assistant District Attorney, on the brief), for Respondent–Appellee.

Before: WINTER, Chief Judge, MESKILL and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

Erwin Jackson appeals from a decision of the United States District Court for the Eastern District of New York (Jacob Mishler, *Judge*) denying his 28 U.S.C. § 2254 habeas corpus petition. We reverse.

## FACTS AND PROCEDURAL HISTORY

Jackson was convicted by a Nassau County jury in 1985 of robbery in the first degree, in violation of N.Y. Penal Law § 160.15[4], and criminal use of a firearm in the first degree, in violation of N.Y. Penal Law § 265.09(2), each of which stemmed from a 1984 robbery of a jewelry store. Jackson was sentenced by the state court to concurrent indeterminate terms of imprisonment of ten to twenty years on each count, and is now serving his sentence. The two crimes for which he was indicted—robbery in the first degree and criminal use of a firearm in the first degree—each rested on the same factual predicate: during the robbery, Jackson apparently brandished, though he did not otherwise employ, a firearm. Jackson's trial attorney, however, did not object, on double jeopardy grounds, to the indictment.

In bringing Jackson's direct appeal, Jackson's new attorney raised only two issues—she argued to the Appellate Division that Jackson's guilt was not proven beyond a reasonable doubt and that the trial court improperly admitted into evidence both line-up and in-court identifications of Jackson.[1] Jackson's appellate counsel did not, on direct appeal, raise a double jeopardy challenge to the two counts on which Jackson had been indicted. Jackson filed a pro se supplemental brief in the Appellate Division, arguing, among other things, that his speedy trial rights (protected under state law) were violated, that improper jury instructions were given at trial, and that he was wrongly sentenced as a prior felony offender.[2]

The Appellate Division affirmed Jackson's conviction. *See People v. Jackson*, 145 A.D.2d 646, 536 N.Y.S.2d 482 (1988). And Jackson's appellate attorney did not seek a certificate for leave to appeal his conviction to the New York Court of Appeals.

In 1989 and 1991, Jackson moved pro se to reargue his appeal before the Appellate Division and in his 1991 motion, for the first time, raised a double jeopardy claim.[3] The Appellate Division denied the 1991 motion in 1992. Jackson contemporaneously filed a series of pro se motions in the Supreme Court of Nassau County under N.Y. Criminal Procedure Law § 440.10 and § 440.20 to vacate or set aside his conviction and to permit him to reargue his case in that court. Each of these motions was denied, and the denials were summarily affirmed by the Appellate Division.

Jackson subsequently filed several petitions for a writ of error coram nobis with the Appellate Division. In two of these petitions, Jackson claimed that his appellate counsel was ineffective on a number of grounds, including her failure to contest Jackson's firearm conviction on double jeopardy grounds. These petitions were also summarily denied by the Appellate Division. Leave to appeal to the New York Court of Appeals was denied.

In 1993, Jackson sought a writ of habeas corpus in the United States District Court for the Eastern District of New York. His petition raised a number of claims, including the argument that his convictions on both first-degree robbery and first-degree criminal use of a firearm violated the Double Jeopardy Clause and that he had been denied effective assistance of counsel on appeal.[4] The district court dismissed his petition, concluding that Jackson had not been deprived of effective assistance of counsel, as his lawyer had "filed a brief [on appeal] challenging several aspects of his trial and conviction including the sufficiency of the evidence to support the jury's guilty verdict, the suggestiveness of his lineup identifica-

---

1. Specifically, the appeal challenged the introduction of the jewelry shop owner's selection of Jackson from a police line-up, in addition to the in-court identification of Jackson by the jewelry shop owner and investigating officer.

2. Jackson apparently had a prior record, having been previously convicted of four counts of robbery in the second degree and assault in the second degree.

3. Jackson also reiterated his speedy trial claim.

4. Jackson also argued that his right to a speedy trial under New York Criminal Procedure Law § 30.30 was violated and that the state trial court had violated his due process rights when it declined to hold a hearing on his § 440.10 motion to vacate his sentence. The district court dismissed both claims. These claims are not before us on appeal.

tion, and the presentation of photographic and lineup evidence at trial." [5]

The district court, nonetheless, issued a certificate of appealability to Jackson. We remanded the case to the district court to enable that court to set forth with particularity the issues warranting such a certificate, as required by 28 U.S.C. § 2253(c)(3). Finding no issues, the district court declined to grant another certificate. Jackson then petitioned this Court and, on February 11, 1998, we granted a certificate of appealability on two issues: whether Jackson's convictions for robbery and criminal use of a firearm violated the Double Jeopardy Clause and whether Jackson was denied effective assistance of counsel based on his appellate counsel's failure to raise the double jeopardy issue on direct appeal.

## DISCUSSION

### I

■ Because Jackson did not raise the double jeopardy claim in his original appeal, the claim is procedurally barred and we may not reach it as such. *See* 28 U.S.C. § 2254(b), (c) (Supp.1997) (requiring exhaustion of state remedies) [6]; *Coleman v. Thompson,* 501 U.S. 722, 752–57, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (holding that the failure to raise a claim on direct appeal is not excusable).[7]

Jackson cannot argue that his double jeopardy claim was so "novel" that, under *Reed v. Ross,* 468 U.S. 1, 16–20, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), and *Engle v. Isaac,* 456 U.S. 107, 131–34, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), he did not have the requisite tools to make the claim at the time of his direct

appeal—the Supreme Court's standard, prior to passage of the AEDPA, for excusing procedural default.[8] The argument that Jackson now raises—that he may not be prosecuted for two crimes when each of the crimes turns on the same factual predicate—was established long ago by the Supreme Court, *see Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and has been reaffirmed on numerous occasions, *see, e.g., Ball v. United States,* 470 U.S. 856, 861, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). Similarly, after trial but before Jackson filed his first appeal, the New York Court of Appeals decided *People v. Brown,* 67 N.Y.2d 555, 496 N.E.2d 663, 505 N.Y.S.2d 574 (1986) (per curiam). In *Brown,* a case involving facts very similar to those in the case before us, the New York Court held that "[w]hen use of or display of a firearm is an element of ... [robbery in the first degree], the use or display of that same firearm cannot also be the predicate for criminal [use] of a firearm in the first degree." *Id.* at 560, 505 N.Y.S.2d at 576, 496 N.E.2d at 665. Under the circumstances, it cannot be argued that Jackson, or rather his appellate attorney, lacked the relevant tools with which to raise his double jeopardy claim on direct appeal. That claim, therefore, is procedurally defaulted and cannot be made directly in federal court through a habeas petition.

### II

Jackson contends, however, that his appellate attorney's failure timely to raise the double jeopardy claim was sufficiently egregious to constitute constitutionally ineffective assistance of counsel under *Strickland v.*

---

5. The district court did not discuss the Double Jeopardy claim directly.

6. Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (codified in scattered sections of 8 U.S.C. and 28 U.S.C. (Supp.1997)).

7. Under New York Criminal Procedure Law § 440.10(2), New York courts are barred from reviewing a motion to vacate judgment that is based on a claim that was unjustifiably not raised on direct appeal.

8. Because Jackson filed his habeas petition before the enactment of the AEDPA, the AEDPA amendments do not govern the disposition of his petition. For this reason, while we address *Reed* and *Engle,* we need not consider their continued validity after passage of the AEDPA. Because we find that *Reed* and *Engle* do not justify Jackson's failure to raise the double jeopardy issue on direct appeal, we also need not discuss the significance to *Reed* and *Engle* of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which for the most part bars a habeas petitioner from receiving the benefit on collateral review of "new" law.

*Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Since he was deprived of his Sixth Amendment right to counsel, Jackson maintains, he is entitled to a decision on the merits of his double jeopardy claim in his habeas petition. *See, e.g., Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (holding that a habeas petitioner may avoid procedural default by showing that counsel's performance was constitutionally ineffective).

■ "To prevail on [a] Sixth Amendment claim, [a] defendant must prove that counsel's representation 'fell below an objective standard of reasonableness' judged by 'prevailing professional norms.' He must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Alli-Balogun,* 72 F.3d 9, 11 (2d Cir.1995) (per curiam) (citation omitted) (quoting *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052).[9]

### A.

■ In reviewing *Strickland* claims, courts are instructed to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel's conduct was not the result of error but derived instead from trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. We are also instructed, when reviewing decisions by counsel, not to "second-guess reasonable professional judgments and impose on ... counsel a duty to raise every 'colorable' claim" on appeal. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).[10]

■ Despite the rigorous *Strickland* standard, this Court has previously noted that "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and signifi-

cantly weaker." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). Moreover, relief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy. *See Kimmelman v. Morrison,* 477 U.S. 365, 385, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

■ In the instant case, we believe that appellate counsel's failure to raise a well-established, straightforward, and obvious double jeopardy claim constitutes ineffective performance. On the face of the indictment, it was apparent that Jackson's two charges—first-degree robbery and criminal use of a firearm in the first degree—rested on precisely the same factual predicate. Trial counsel should, at the very outset, have challenged the two-count indictment and have had one count removed. *See Brown,* 67 N.Y.2d at 560, 505 N.Y.S.2d 574, 496 N.E.2d 663; *see also Ball,* 470 U.S. at 861, 105 S.Ct. 1668; *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180. Moreover, that counsel's omission cannot have been the result of any kind of strategy. Although appellate counsel cannot be blamed for trial counsel's errors, her own failure to raise the double jeopardy issue on appeal also could not reflect a plausible strategy to pursue more promising grounds. This is not a case in which an appellate attorney had several possible arguments to make, one of which was very strong and the others quite weak, and chose to focus on the strong argument rather than allow the weaker ones to dilute its strength. In this case, there was one sure winner—the argument that appellate counsel did not make. We cannot conceive of how making such an argument could possibly have interfered with the making of any other arguments that were available to Jackson. Most likely appellate counsel, when she filed Jackson's direct appeal, simply overlooked the holding of the New York Court of Appeals in *Brown*—a case that was decided between Jackson's trial and his appeal, and whose facts mirrored

---

9. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

10. And, the Supreme Court has said that the Constitution "does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Isaac,* 456 U.S. at 134, 102 S.Ct. 1558.

those of Jackson's case.[11] Under the circumstances, we cannot say that counsel's cursory appellate brief, which raised a couple of highly dubious claims, excuses her omission. And we conclude that her performance fell below the standard set forth in *Strickland*.

■ We have indicated that the usual practice should be to remand *Strickland* cases to the district court to permit the attorney in question to testify and explain her actions. *See Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir.1998) (per curiam); *United States v. Dukes*, 727 F.2d 34, 41 n. 6 (2d Cir.1984). This procedure, we have also said, might not be necessary in a highly unusual case where no plausible explanation for an attorney's actions exists. In such a situation, a remand can only be a waste of judicial time. We adhere to what we said in *Dukes* and *Sparman*. But this is the rare case in which a remand is not needed.

### B.

■ To succeed on a *Strickland* claim, however, a petitioner must also show prejudice. And this, the State contends, Jackson, as he received no additional jail time for the firearm conviction, cannot do. To emphasize the point, the State, at oral argument, declared that this case is "much ado about nothing" and should therefore be dismissed. One may question why the State would devote its time, energy, and money to prevent petitioner, on procedural grounds, from making his convictions adhere to settled law, if doing so made no difference. The explanation, of course, is that leaving the double conviction in place may well matter. For, with the multiplication of repeat offender sentencing schemes in various states, it is more than possible that Jackson could receive enhanced jail time (should he commit future criminal offenses) precisely because of

the existence of the improper firearm conviction in his criminal record.[12]

The federal Sentencing Guidelines already take into account previous felony convictions and enhance sentences accordingly. *See* U.S. Sentencing Guidelines Manual § 4A1.1 (1997) (setting forth the determination of criminal history categories for sentencing). And so do the sentencing schemes of most states. *See, e.g.,* N.Y. Penal Law § 70.10 (McKinney 1998) (establishing that persistent violent felony offenders may receive higher sentences); Cal.Penal Code § 1170.12 (West 1997) (setting forth the sentencing scheme for prior felons). While these existing schemes would not consider Jackson's two convictions as separate for purposes of enhancement, *see, e.g.,* U.S. Sentencing Guidelines Manual § 4A1.1 (1997); N.Y. Penal Law § 70.10 (McKinney 1998), we cannot predict what even these states might do in the future. Thus, it is more than conceivable that some state or federal sentencing plans, even if they do not currently turn on the *number* of previous convictions recorded, will do so in the future. The degree of prejudice may not seem great, but when one considers that there is essentially no reason not to correct what was a manifest error, we hold that it is sufficient. *See Ball*, 470 U.S. at 864–65, 105 S.Ct. 1668.

### III

Jackson has met the requirements of *Strickland*. The failure of his appellate counsel to challenge Jackson's double conviction on appeal amounts to constitutional ineffectiveness. Had counsel challenged the firearm count, it is surely the case that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Since Jackson may suffer tangible prejudice from the existence of the addi-

---

**11.** The New York Court of Appeals held in *Brown* that the convictions in that case "should not stand," because "[n]either crime contains an element which is not also an element of the other crime. The gun first elevated defendant's robbery conviction to a class B violent felony; the class B felony and possession of that same gun then sustained the conviction for criminal possession of a firearm." *Brown*, 67 N.Y.2d at 560, 505 N.Y.S.2d at 576, 496 N.E.2d at 665. The

Court concluded that "[w]hen use of or display of a firearm is an element of a class B felony, the use or display of that same firearm cannot also be the predicate for criminal display of a firearm in the first degree." *Id.*

**12.** And it is anything but clear that he would be able, collaterally, to challenge the propriety of the firearm conviction at that time.

tional, and improper, conviction on his New York criminal record, we hold that Jackson's firearm conviction must be removed from his record.[13]

The judgment of the district court is reversed and the case is remanded to the district court with instructions to grant petitioner's writ.

MESKILL, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's opinion to the extent that it concludes that the conviction of Jackson for both robbery in the first degree and criminal use of a firearm in the first degree runs afoul of the Double Jeopardy Clause.

I dissent, however, from the majority's disposition of the case. I believe that before granting the writ we should remand the case and instruct the district court to offer Jackson's appellate counsel an opportunity to explain her actions. Doing so would comport with the preferred procedure we enunciated in *United States v. Dukes,* 727 F.2d 34, 41 n. 6 (2d Cir.1984), and recently reaffirmed in *Sparman v. Edwards,* 154 F.3d 51, 52 (2d Cir.1998) (per curiam). In short, I believe very strongly that a lawyer's interest in his or her professional reputation is great enough to justify affording that lawyer an opportunity to be heard before his or her performance is branded "ineffective."

I agree that no good explanation readily springs to mind for the failure to raise the double jeopardy argument on direct appeal; it nonetheless bespeaks judicial arrogance to assume that counsel's failure is indefensible without first offering her the opportunity to explain her failure to raise the issue. It just is not fair to the state court appellate counsel who is not involved in this petition and will have no opportunity to defend herself. I believe that the writ should issue only after appellate counsel has been given the opportunity to explain her conduct and has failed to show that her conduct was reasonable under the circumstances and not ineffective representation.

---

**13.** Jackson attacks his firearm conviction and the State does not challenge that choice. Accordingly, it is the firearm conviction that would be removed from his record and we do not reach the question of how we would decide which conviction should be removed if the issue were contested.