[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PETITION FOR WRIT OF HABEAS CORPUS DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL
The petitioner, Richard Cooke, petitions for a writ of habeas corpus, alleging ineffective assistance of trial counsel with regard to his three convictions for forgery in connection with the mortgaging of property jointly held by him and his wife. See State v. Cooke, 42 Conn. App. 790,792 (1995).
 I. Facts Underlying Forgery Convictions
The petitioner attended a real estate closing in May of 1990 at a law office in Stamford, Connecticut to close a $115,000 loan. The petitioner secured this loan with a mortgage on his Fairfield residence, which was CT Page 6661 jointly owned by his wife, Maryalice Cooke (Mrs. Cooke). The mortgage deed required the signatures of both mortgagors. The petitioner attended the closing without Mrs. Cooke and represented that Mrs. Cooke could not attend the closing because she was ill. At the petitioner's request, the bank agreed to allow him to take the mortgage deed to Mrs. Cooke to sign and then return to the closing. See Id. at 792.
Instead of obtaining Mrs. Cooke's signature, the petitioner went to his office where he signed Mrs. Cooke's name on the mortgage deed in the presence of a business associate, Nyles Wheeler (Wheeler), and his secretary, Candace Cece (Cece), and an unidentified second witness. Cece notarized the mortgage deed after Wheeler and the unidentified party signed as witnesses, and the petitioner returned to the law office with the mortgage deed. The lawyer who was overseeing the mortgage closing believed that the mortgage deed had been properly executed by Mrs. Cooke and accepted the document. See Cooke, supra at 792-3.
Approximately two years later, in February of 1992, the petitioner and Mrs. Cooke dissolved their marriage. In November of 1993, Mrs. Cooke brought a complaint to the Fairfield Police Department concerning the aforementioned mortgage deed claiming that she neither signed nor authorized the petitioner to sign the mortgage deed on her behalf. As a result of a subsequent investigation, the State charged the petitioner with two counts of forgery in the second degree and one count of forgery in the third degree, the latter a misdemeanor. At trial, he was convicted of all three charges. Id. at 793.
Petitioner took an appeal from this conviction to the appellate court, which upheld the two felony convictions. However, the appellate court held that the misdemeanor charge merged with one of the felony charges as a lesser included offense and remanded the case to the trial court directing that it vacate the misdemeanor conviction.[1] Id. at 802-3. Petitioner now brings this petition to invalidate the remaining felony convictions.
 II. Facts Relating to the Habeas Corpus
After being charged with the forgery offenses, the petitioner retained Attorney Bennett (Bennett) to represent him in the criminal proceedings. [Tr. 2/23, p. 4] Bennett had established his law practice in Connecticut in 1983, in which he devoted approximately 60 percent to matrimonial matters and 40 percent to criminal matters. [Tr. 2/23, p. 28][2]
During the initial consultation, which took place in Bennett's office[3]
on January 28, 1994, Bennett determined that the petitioner had no prior criminal record and that he had recently undergone an extremely CT Page 6662 acrimonious divorce with the complainant, Mrs. Cooke. [Tr. 2/23 pp. 4-6] The petitioner also informed Bennett that he had also filed criminal complaints against the complainant that were then pending in the same court. [Tr. 2/23 p. 5] As a result of the information learned in the initial interview, Bennett focused on the exchange of nolles in both the petitioner's and the complainant's cases as the primary strategy to resolve the petitioner's case without a preliminary analysis of the merits of the State's case against the petitioner. [Tr. 2/23 p. 5] In fact, there was little or no discussion of the facts of the criminal case against the petitioner at this meeting. [Tr. 2/23 p. 5] Bennett also discussed the possibility of an accelerated rehabilitation[4] (AR) disposition of the case with the petitioner, but did not go into a detailed discussion about the program other than to inform Cooke that upon the successful completion of a probationary period, he would not have a criminal record. [Tr. 2/23 p. 5] Suffice it to say that, at the conclusion of this meeting, Bennett had settled on pursuing an exchange of nolles as the primary strategy for resolving the petitioner's criminal difficulties. Pursuant thereto, Bennett thereafter persistently pursued this strategy with the prosecutor even though the prosecutor clearly rejected such disposition on every occasion it was discussed and was obviously not interested, under any circumstances, in the exchange of nolles as a potential disposition of this case. [Tr. 2/23, pp. 6, 7, 13, 77]
Bennett's consultations with the petitioner prior to trial consisted of brief discussions during court appearances and telephone conversations. [Tr. 2/23, pp. 30-31] A telephone conversation, which was particularly significant, took place in September 1994, some five to six months before trial. That. involved a conference call[5] between Bennett, the petitioner and a representative of the National Association of Securities Dealers (NASD) to discuss the ramifications that a conviction or an AR might have on the petitioner's ability to continue practicing in the securities industry. [Tr. 2/23, pp. 12-13] There is a dispute between Bennett and the petitioner as to the subject matter of that call.[6]
Bennett claims that the subjects of the criminal convictions and AR probation were discussed and that both were advised by the NASD representative that any felony conviction would result in the loss of the petitioner's license, while a misdemeanor conviction would merely put such license at risk of loss. [Tr. 2/22, pp. 7, 12] Further, that a probationary period associated with an AR would have to be disclosed only if it was in existence at the time of recertification but would not affect his licensing. [Tr. 2/23, p. 12-13] On the other hand, the petitioner claimed that he was unaware of what impact a felony conviction would have had on his NASD licensing and that this subject was never discussed; that the first time he was aware of its impact was when he attempted to reinstate his license a month after his conviction. [Tr. CT Page 6663 2/22, p. 10] The petitioner's explanation of this conversation does not jibe with the overall purpose of the call, which was to determine what the ramifications of the petitioner's criminal difficulties would have on his securities career in order that an appropriate strategy could be decided upon. [Tr. 2/22, pp. 7-10, 14] Finally, it is highly improbable that the subject was not raised by the petitioner himself, who was better informed as to the requirements of licensing in the industry that he had worked in for many years and, therefore, had to appreciate, even without knowing the seriousness of the offenses with which he was charged, that his licenses stood at some risk in the event of an unfavorable result of his criminal difficulties.[7] In view of these improbabilities, this court chooses to accept the Bennett version of the September conference call and charges the petitioner with knowledge of the information that Bennett indicated emanated therefrom.
The petitioner next claims that he was never aware an AR was actually offered. Although he does not dispute that Bennett broached the subject, he claims it was only discussed as a possibility because no definite probationary period was ever discussed. [Tr. 2/22, pp. 9-10, 12, 16] This may well have been a question in Cooke's mind, because the record indicates that, although the State's attorney was amenable to an AR disposition from "day one," no discussion of a probationary period was discussed until the trial judge indicated at the last pre-trial conference that he would be willing to impose a one day probation as part of a negotiated AR disposition.[8] [Tr. 2/22, 19-21]
The petitioner here claims that, had he known of the one-day probation offer, he would have accepted it, because a probationary period of such brief duration would not have been reportable on his NASD record. [Tr. 2/22, pp. 12-13]
The remaining facts are undisputed. Bennett did not file a motion for a bill of particulars. [Tr. 2/23 p. 44] Bennett did not file a motion to dismiss any of the charges against the petitioner, specifically the misdemeanor.[9] [Tr. 2/23, p. 45, 47] Bennett did not file a motion in limine or request a charge to avoid exposing the petitioner to convictions on all three forgery charges. [Tr. 2/23, p. 50] Bennett never interviewed the complainant's attorney, Douglas Cott (Cott), who contradicted the complainant's version of how she learned of the alleged forgery.[10] [Tr. 2/23, pp. 98-104] The petitioner did not testify as a witness at the criminal trial. [Tr. 2/23, 77-78, 167]
 III. Petitioner's Claims
In the instant proceeding, the petitioner predicates his claim of ineffective assistance of counsel primarily on three claims. CT Page 6664
 1. Counsel did not investigate the case and explore with the petitioner the decision not to testify;
 2. Counsel failed to adequately investigate the case, and failed to employ the information contained in the supplementary police report to impeach the credibility of Maryalice Cooke; and
 3. Counsel failed to advise him of the availability of the one day accelerated rehabilitation offered by the judge. [Petitioner's Post Trial Brief at 1 (March 15, 1999)].
The petitioner originally asserted thirteen separate allegations of ineffective assistance of counsel in his petition, but on oral argument characterized ten of these as merely providing a "flavor" or "context" by which the court may evaluate the three central claims.[11]
[Petitioner's Post Trial Brief at 1 (March 15, 1999)] Since it is not clear whether the petitioner is relying on all of the allegations of ineffectiveness in aggregate as a primary claim or merely enhancements of some primary claims, this court will address each of these claims individually.
Beginning with those derelictions characterized as enhancements of Bennett's incompetence, the petitioner claims that Bennett (1) failed to move to dismiss the second and third counts of the information, thus exposing the petitioner to trial and conviction for multiple counts, in violation of the federal constitution's prohibition against double jeopardy; (2) failed to move for a bill of particulars; (3) failed to move for a judgment of acquittal;[12] (4) failed to file a request for jury instructions to limit the jury's ability to convict the petitioner on but one of the three counts; (5) failed to move for the dismissal of the misdemeanor count of the information which was barred by the applicable criminal statute of limitations; (6) failed to adequately investigate and prepare petitioner's case for trial; (7) failed to file a motion in limine, to preclude the State from using, for impeachment purposes, a portion of petitioner's testimony in an unrelated family matter in the event the petitioner took the witness stand; (8) failed to adequately advise petitioner that a felony conviction could cause the petitioner to be disqualified from registration or licensing in the securities industry; (9) failed to employ the supplementary police report in his examination of the detective who investigated the complaint; and (10) failed to investigate, interview or call as a witness, Mr. Cott, Mrs. Cooke's divorce attorney, despite the potential impeachment value that testimony may have had. [Petition ¶ 3 (April 25, 1996)] CT Page 6665
 IV. The Applicable Law
The Sixth and Fourteenth Amendments to the United States Constitution and Article 1st, Section 8 of the Connecticut Constitution, guarantee that all defendants in all criminal prosecutions are entitled to the effective assistance of counsel. However, before a court may issue a writ of habeas corpus due to ineffective assistance of counsel, the petitioner must satisfy the test articulated in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That test is comprised of two components: the performance component and the prejudice component. Id. at 687. The Strickland test has also been adopted by our Supreme Court. SeeFair v. Warden, 211 Conn. 398, 402-4 (1989). The petitioner must, therefore, show that his counsel's errors were so serious that they deprived him of a fair trial, i.e., that his "conviction resulted from a breakdown in the adversary process that rendered the result unreliable."Strickland, supra at 687; Fair, supra at 402.
The performance component of the Strickland test requires that the defendant "show that the counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-8.
Once the court is satisfied that this performance component is met, the petitioner must satisfy the second component — "prejudice". Even if an error by counsel is professionally unreasonable, a conviction should not be overturned if it did not have any effect on the judgment. Id. at 691. The prejudice test requires that
 "[t]he defendant . . . show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
In other words, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.
Finally, it should be noted that a court deciding an ineffectiveness claim need not address both components of the Strickland test if there is an insufficient showing on one. Strickland, 466 U.S. at 697; State v.Aillon, 211 Conn. at 362; Nardini v. Manson, 207 Conn. 118, 124 (1988). Therefore, "[i]f it is easier to dispose of the ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." Strickland at 697; see also Nardini, 207 CT Page 6666 Conn. at 124. This court adopts such a course in the instant case inasmuch as it concludes that most of the claims made by the defendant fail to pass the Strickland prejudice test. See, Purdy v. United States, ___ F.3d ___, Docket No. 99-2461 (2d Cir. 3/27/00)
 V. CLAIMS WHICH DO NOT PASS THE PREJUDICE TEST
The first of such claims is that the petitioner was "denied effective assistance of counsel by the failure of trial counsel to move to dismiss the, second and third counts of the information; thereby exposing the petitioner to trial and conviction for multiple counts alleging the same conduct in violation of his double jeopardy rights under the Fifth andFourteenth Amendments to the United States Constitution. [Petition ¶ 3(b) (April 25, 1996)] Although the legal principle relied on is correct, the plaintiff has sustained no constitutional prejudice.
In Jackson v. Leonardo, 162 F.3d 81, 83 (2nd Cir. 1998), the defendant filed a petition for a writ of habeas corpus after he had been charged and convicted of two separate crimes, i.e., robbery in the first degree and criminal use of a firearm in the first degree, both of which rested on the same factual predicates. Because the defendant's attorney failed to raise the issue of double jeopardy at trial, the defendant was procedurally barred from asserting the claim on direct appeal. Id. at 84. However, in the habeas petition brought by the same defendant, the Second Circuit held that:
 "the failure of [the defendant's] counsel to challenge [the defendant's] double conviction . . . amounts to constitutional ineffectiveness. Had counsel challenged the [criminal use of a] firearm count, it is surely the case that `the result of the proceeding would have been different.'" Id. at 86.
The court found that the prejudice to the defendant would have been "tangible prejudice" in the form of an additional conviction on the defendant's criminal record. Id. at 86-7.
Jackson is inapplicable to this claim because any failure by petitioner's trial attorney to file a motion to dismiss the second and third counts of the information was corrected on appeal. See generally,State v. Cooke, 42 Conn. App. 790 (1996). Furthermore, in the petitioner's case there has been no "tangible prejudice" due to any additional charges. The appellate court rejected the petitioner's double jeopardy claim, holding that "the two crimes of which the [petitioner] was convicted were different offenses and, thus, not in violation of the double jeopardy clause."[13] Id. at 802. Additionally, the state CT Page 6667 conceded on appeal that forgery in the third degree was a lesser-included offense of forgery in the second degree. Id. Finally, the appellate court remanded the case to the trial court with directions to merge the misdemeanor count with the second forgery count. Id. Consequently, the failure to raise the double jeopardy issue at trial was harmless inasmuch as the appellate court found no double jeopardy and only those convictions that had been affirmed would appear on Cooke's criminal record.
Secondly, the petitioner alleges that he was "denied effective assistance of counsel by the failure of trial counsel to move for a bill of particulars." [Petition ¶ 3 (April 25, 1996)] This allegation is really a part of the previous allegation and is, likewise, not prejudicial to the petitioner. The only thing that a bill of particulars would have revealed to Bennett was that there were three charges of forgery, one of which was a misdemeanor susceptible to dismissal due to an expired statute of limitation. As previously noted, this deficiency was corrected on appeal, and, therefore, this allegation does not rise to the level of prejudice required under Strickland.
Next, the petitioner alleges that he was "denied effective assistance of counsel by the failure of trial counsel to timely move for a judgment of acquittal pursuant to Section 882, of the Superior Court Rules for Criminal Cases."[14] Here, too, petitioner has failed to satisfy the prejudice prong of Strickland. The petitioner has offered no evidence to suggest a likelihood of an acquittal of the crimes charged but for his attorney's failure to move for a judgment of acquittal. To the contrary, the appellate court sustained the two felony convictions. Cooke,42 Conn. App. at 802-3. Therefore, the petitioner has not established a reasonable probability that his attorney's errors rendered the process unreliable.See Strickland, 466 U.S. at 694.
In petitioner's fourth allegation he claims his representation was constitutionally ineffective by reason of his attorney's failure to file a request for jury instructions limiting the jury's ability to convict the petitioner on but one of the three counts. [Petition ¶ 3(e) (April 25, 1996)] Although his attorney did not file a motion in limine
to limit the amount of counts the petitioner could be convicted on, this, too, was corrected, on appeal. The Cooke appellate court held that the first two counts of the petitioner's convictions did not contravene the constitutional provisions against double jeopardy. See Cooke,42 Conn. App. at 802. Although the appellate court did hold that the petitioner's conviction on the misdemeanor count was obtained in violation of that constitutional prohibition, this did not ultimately prejudice petitioner inasmuch as the case was remanded to the trial court with directions to merge the misdemeanor charge as a lesser included offense with one of the CT Page 6668 valid felony convictions. Id. at 802-3. Therefore, the petitioner suffered no prejudice from this claimed dereliction.
The petitioner further asserts that he was "denied effective assistance of counsel by the failure of his attorney to move to dismiss the misdemeanor count on the grounds that it was barred by the applicable criminal statute of limitations." [Petition ¶ 3(f) (April 25, 1996)] Because this error was corrected on appeal for the reasons previously stated, the petitioner did not suffer prejudice as a result.
The petitioner's sixth claim alleges that he was denied effective assistance of counsel due to trial counsel's failure to adequately investigate and prepare the petitioner's case for trial. [Petition ¶ 3(e) (April 25, 1996)] Assuming arguendo that the trial counsel's investigation and preparation for the trial were "professionally below standard", petitioner's "conviction should not be overturned if such errors did not have any effect on the judgment." Strickland, supra at 691. There is no evidence in the record to indicate what an "adequate" investigation would have revealed or the result an "adequate" preparation would likely have produced. Therefore, because the petitioner has not provided any evidence that, but for trial counsel's inadequate investigation and preparation, the results of the criminal proceeding would have been different, this allegation does not rise to the level of prejudice required in Strickland. Id. at 694.
The petitioner next alleges that trial counsel failed to file a motionin limine that would have precluded the State from using for impeachment purposes a portion of petitioner's testimony in an unrelated family matter in the event the petitioner took the witness stand. [Petition ¶ 3(i) (April 25, 1996)] Petitioner again offers no evidentiary basis to support a conclusion that, had petitioner testified unimpeached, the outcome of the case would have probably been different. Although the petitioner has seized upon an apparent deficiency in his attorney's performance, he has failed to connect that deficiency with any prejudice to him in terms of undermining the fairness of the trial. See Strickland,supra 694. Therefore, this court finds that no reasonable probability exists that, absent this omission by the petitioner's trial attorney, the jury would have had a reasonable doubt respecting guilt. See Id. at 695.
The petitioner's eighth claim is that the trial attorney failed to adequately advise the petitioner that a felony conviction would cause the petitioner to be disqualified from registration or licensing in the securities industry. [Petition ¶ 3(j) (April 25, 1996)] The prejudice that the United States Supreme Court was concerned with inStrickland was prejudice to a criminal defendant resulting from an unfair trial. See generally, Strickland, supra. Although the petitioner's felony CT Page 6669 conviction may have prejudiced him personally, such personal injury does not affect the fairness of the trial process as required by Strickland.Id. at 694. Consequently, this claim also lacks merit.
Further, the petitioner alleges that trial counsel failed to employ the supplementary police report in his cross-examination of the investigating detective. [Petition ¶ 3(k) (April 25, 1996)] Petitioner claims that doing so would have highlighted for the jury a serious discrepancy in the complainant's testimony regarding when she first became aware of the forgery. However, it cannot be predicted with any degree of probability on the record at hand that the effect of emphasizing such evidence would probably lead the jury to the conclusion that there was a reasonable doubt as to the petitioner's guilt.[15] In fact, the complainant testified at the criminal trial that she was not sure of how or exactly when she became aware of the alleged forgery. [Forgery Tr. 4/12/95, pp. 202-203] Consequently, her own testimony had the effect of undermining the petitioner's potential attack on her credibility on this issue. Therefore, no reasonable probability, i.e., a probability sufficient to undermine the confidence in the outcome of the trial, existed due to this alleged dereliction. See Strickland, supra at 694. For this reason, the petitioner has not met the standard required in Strickland.
The final allegation that the petitioner provided for the purposes of enhancing the magnitude of his attorney's incompetence is that he failed to investigate, interview or call as a witness, Mr. Cott, the complainant's divorce attorney, in spite of its potential impeachment value. [Petition ¶ 3(k) (April 25, 1996)] For the reasons already expressed above, this claim is speculative at best and fails to support the conclusion that its impeachment value was likely to change the outcome of the case. Consequently, this claimed deficiency also fails theStrickland prejudice test. See Strickland, supra at 694.
Finally, although the foregoing claimed deficiencies in performance, whether considered separately or in the aggregate, may well have enhanced the magnitude of the trial attorney's overall deficient performance, they nevertheless fail to increase the level of prejudice resulting from the alleged incompetence to the point where it can be said that the process by which the petitioner was convicted was unreliable. Fair v. Warden,211 Conn. 398, 402 (1989); Aillon v. Meachum, 211 Conn. 352, 357 (1989).
 VI. TWO CENTRAL CLAIMS LACK PREJUDICE
The first of these is that the petitioner's attorney did not adequately investigate the case and explore with the petitioner the decision not to testify. [See Petitioner's Post Trial Brief 3/15/99, p. 1] The petitioner urges that two of the witnesses that testified on his behalf can be CT Page 6670 viewed as not strong witnesses.[16] Therefore, trial counsel should have prepared the petitioner to take the witness stand to allow the jury the opportunity to hear his explanation of the alleged forgery from his own mouth and to allow the jury to judge his character and demeanor, which he urges were essential to an adequate defense in his case. [Petitioner's Post Trial Brief 3/15/99, p. 5] Trial counsel testified that he put a lot of thought into whether or not the petitioner should testify and later discussed with the petitioner the reasons why he should not testify.[17] [Tr. 2/23, pp. 77-8]
However, even if trial counsel failed to adequately explore with the petitioner the decision not to testify, that is an issue of performance, which the court finds unnecessary to address. Without discussing the merits of this incompetence claim, this court finds that petitioner has failed to meet the prejudice requirement articulated in Strickland. SeeStrickland, supra at 697; Accord State v. Aillon, 211 Conn. at 362;Nardini v. Manson, 207 Conn. 118, 124 (1988).
Petitioner offered not one scintilla of evidence that his testimony would have been conclusive of his innocence or, at the very least, established the likelihood that the verdict would have been different.See Strickland, supra at 695. The issue raised by this claim is essentially one of relative credibility, i.e., the petitioner's character. More precisely, whether the petitioner's good character, together with the testimony of two less credible witnesses, was likely to convince the jury to believe the petitioner's version over the testimony of the complainant and her version of the crucial events. However, his character — which he has put on center stage by this claim — contains a very large flaw that the jury could have focused on.
At the mortgage closing in May of 1990 when the issue of the need for the complainant's signature arose, the petitioner represented to the attorney overseeing the closing that he would leave to get the complainant's signature on the mortgage deed. See State v. Cooke,42 Conn. App. 790, 792-3 (1996). In point of fact he did not get the complainant's signature. Instead, what he got, according to him, was merely an authorization for him to sign her name to the deed. This is undisputed evidence. Cooke failed to inform the attorney at the closing of this significant change, but, instead, permitted the attorney to believe that the complainant's signature appeared on the deed. Under the circumstances, this non-disclosure on his part could well be viewed by the jury as a major flaw in the petitioner's character. This, of course, would likely be included in any assessment of the petitioner's credibility. Consequently, whether the jury was likely to give greater weight to his testimony than that of the complainant under all the circumstances bearing on the issue of credibility is purely speculative. CT Page 6671 Therefore, petitioner has not met the burden of showing that there is a reasonable probability that the factfinders would have had a reasonable doubt regarding his guilt — but for his attorney's failure to call him as a witness. See Strickland, supra at 695.
The petitioner's second central claim is that his trial counsel failed to adequately investigate the case, and to employ the information contained within plaintiff's exhibit 5,[18] the report of Detective Zabin, to impeach the credibility of the complainant; [Petitioner's Post Trial Brief at 1 (March 15, 1999)]. As stated above, the only purpose for this claim would be to show that the complainant was lying about how she found out about the alleged forgery. There is no evidence in the record to suggest that this information would have caused the jury to disbelieve the complainant's testimony concerning the alleged forgery. In fact, the complainant's testimony militated in favor of mistake rather than an intent to deceive the jury about when and how she found out about her name being signed to the mortgage deed inasmuch as she herself indicated a degree of uncertainty as to this matter. [Forgery Tr. 4/12/95, pp. 202-203] Our Supreme Court has stated that:
 "It is speculative . . . to assume that a `vigorous examination' of the complainant would have been fruitful in eliciting any evidence of consent likely to have raised a reasonable doubt in the minds of the jurors." Johnson v. Commissioner of Correction, 222 Conn. 87, 93-94 (1992).
Therefore, it is equally speculative to assume that a vigorous cross-examination of Mrs. Cooke questioning where and how she became aware of the forgery would have raised a reasonable doubt as to petitioner's guilt. Cooke has also failed to indicate what an "adequate" investigation was likely to reveal. The petitioner has again failed to demonstrate that there is a reasonable probability that, but for the alleged failures, the result of the proceedings would have been different. See Strickland, supra at 694. For this reason, the court finds that the petitioner has not satisfied, the prejudice requirement articulated in Strickland.
 VII. DISCUSSION OF A.R. CLAIM
The petitioner's final and most significant claim is that his trial attorney failed to advise him of the availability of the one-day AR offered by the State's attorney and Judge Gormley at the last pre-trial conference. [Petitioner's Post Trial Brief, p. 1] On this issue the law favors the petitioner. CT Page 6672
The case of Boria v. Keane, 99 F.3d 492 (2d Cir. 1996), is both instructive and persuasive as to the law applicable to this question. That case involved the failure of a defense attorney in a criminal case to advise his client of the advantages of a proffered plea bargain which would have resulted in a significantly shorter sentence than had the defendant opted to go to trial. The defendant rejected the plea bargain and chose to go to trial. He was convicted and received a 20 year sentence. He subsequently brought a habeas action predicated on a claim of ineffective assistance of counsel that eventually reached the Second Circuit court of Appeals.
In discussing the duty of an attorney to inform his client of the significance of a proffered plea bargain the Boria court suggested that this duty is so obvious that it needed little comment observing that:
 "There seems to be no Second Circuit decision dealing with the precise question of a criminal defense lawyer's duty [to advise his client]. . . . This lack of specific decision undoubtedly arises from the circumstances that such duty is so well understood by lawyers practicing in this Circuit that the question has never been litigated." Boria supra, at 496.
The court went on to hold that the standard required by the Strickland
performance test was that, under the totality of the circumstances, it must be shown that the attorney failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances. Id.
The same court addressed this issue three years later in the case ofCullen v. United States, 194 F.3d 401 (2nd Cir. 1999) where it held:
 [e]ven if there might be circumstances where defense counsel need not render advice as to acceptance of a plea bargain, there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution. (Emphasis added). Id. at 402.[19]
Based upon the above case law it is obvious to this court that if a defense attorney in a criminal case has a duty to advise his client of the advantages and disadvantages of accepting a proffered plea bargain, afortori, he has a duty to inform him that a plea bargain was in fact offered. A failure to do so will constitute a clear departure from the level of skill and diligence normally expected of a criminal defense attorney of reasonable competence under similar circumstances. See
CT Page 6673Strickland v. Washington, supra; Boria v. Keane, supra; Cullen v.United States, supra. Moreover, the petitioner offered the uncontroverted testimony of a legal expert in the field of criminal law to this effect. (Tr. 2/22/99, 57-58, 62) Consequently, for all of the foregoing reasons, this court concludes that if petitioner's attorney failed to inform him of the one day AR, that failure would satisfy the Strickland performance test. Cullen v. United States, supra, 402.
The next inquiry concerns the prejudice test. There is no question but that under the circumstances of this case, if Bennett failed to inform Cooke, the Strickland prejudice test would have also been satisfied. Cooke testified in this hearing that had he known of the one-day AR offer, he would have accepted it. Not only is this testimony credible, logic dictates that it was also a reasonable probability at the time that Cooke would have accepted it. See Boria, supra at 497. This is because by accepting that plea bargain he would have not only preserved his career, but even more important, to this case, he would have avoided a criminal record. Cooke was aware of these consequences from previous discussions with Bennett concerning AR in general and from his three-way telephone conversation with the NASD representative early on.
As a proximate result of not accepting the plea-bargain in question, the petitioner was convicted and now has a felony record which he would not have acquired had he accepted the proferred plea bargain. The fact that one has acquired a criminal record as a proximate result of his attorney's dereliction of his professional duty has been held to sufficiently establish constitutional prejudice in 6th Amendment ineffective assistance cases. See Jackson v. Leonardo, supra at 86-87. Clearly the result of the criminal proceedings would have been different but for Bennett's dereliction of the standard required by Strickland v.Washington, supra.
Inasmuch as this court has determined that if Bennett failed to inform Cooke of the plea bargain in question, the petitioner would have successfully established his ineffective assistance claim. Therefore, the only question to be resolved, and which is dispositive of this case, is whether or not Bennett informed his client of the plea bargain in question. Both individuals vigorously take opposite positions on this issue — Bennett says he did and his client rejected the offer, while Cooke says he was never informed of the offer and, therefore, had nothing to reject.
Consequently, the outcome of this case must turn on which version is the more believable, the more reasonable and the more probable under the circumstances disclosed by the record. After a careful weighing of the factors hereinafter mentioned, this court finds the Bennett version to be CT Page 6674 more credible.
First, this court examined the motivations underlying their respective testimony at the instant proceeding as being indicative of the true state of affairs. With regard to Bennett's motivations, it is clear that his objective from the beginning was to resolve this case short of trial. Essentially all of his efforts were directed toward a resolution of these criminal proceedings by a negotiated disposition. The record indicates he did little, if anything, to prepare this case for trial prior to receiving notice of the trial assignment. [Tr. 2/23, pp. 5-6, 92-93, 124-6] There were no pre-trial motions filed, no investigation conducted and little, if any, witness preparation. [Tr. 2/23, pp. 92-93] The record does not disclose any discussions with the State's attorney concerning the State's difficulty in obtaining a conviction. Indeed, it does not appear from the record that Bennett ever seriously evaluated petitioner's chances at trial. Moreover, he thought there was a real possibility that the complainant would not appear to testify [Tr. 2/23, pp. 126-7] and, therefore, the State would be unable to proceed to trial. Finally, he was satisfied, based on conferences with the prosecutor, that, in the absence of an exchange of nolles, he could successfully secure an AR disposition, and this may account for his lack of pre-trial preparation. However, the only impediment to an AR disposition was a lengthy probationary period. This impediment evaporated with the one-day offer. Based on these considerations, it was indeed to his advantage not to try this case unless the petitioner insisted upon a trial. Therefore, it is reasonable to believe that, if he were offered a reasonable opportunity to avoid trial consistent with his client's interests, he would have seized upon it. That opportunity presented itself in the form of a one-day AR. Under these circumstances, it is improbable that he would have failed to inform his client of the offer that was likely to obviate a trial.
On the other side of the coin, there is the petitioner's overriding objective to protect his securities career, which he understood would be seriously jeopardized by any conviction. In addition, there was evidence of his attorney's sub-standard performance. Cooke had also lost an appeal on the merits of his conviction. If he could overturn that conviction by showing that counsel was incompetent in failing to communicate the proffered plea bargain, he could thereby salvage his career. The only obstacle in this scenario was the existence of the proffered plea bargain and this could be overcome by a claim of non-disclosure which might very well be consistent with the other allegations of sub-standard performance by his attorney. Considering all these factors, clearly Cooke had a compelling motive to testify as he did. The court therefore concludes that under the foregoing circumstances Cooke's motivation to color the true state of affairs far exceeds what would motivate Bennett to do the same. The court, therefore, finds Bennett's version more indicative of CT Page 6675 the true state of affairs — more believable.
In determining the relative credibility of these two witnesses, the court next considered other objective evidence disclosed by the record. This, too, tends to be more reasonable and consistent with the trial attorney's testimony on the issue or disclosure than with the petitioner's account of non-disclosure.
On the day the proffered offer was first made, Judge Gormley testified that Bennett responded to the offer by briefly leaving his chambers and returning with the result being that the case remained on the trial list to the time of trial.[20] [Tr. 12/23, p. 22] The inference is clear, both from the Judge's account of what occurred and from Bennett's own testimony,[21] that Cooke was in the corridor during this time and Bennett left Gormley's chambers to discuss this new and attractive offer with him and that the offer had been rejected since the case remained on the trial list until the trial took place.[22]
Under these circumstances there appears to be only two ways to reconcile what occurred on the occasion of the last pre-trial conference: either Bennett forgot to inform the petitioner of the one-day offer, or he intentionally withheld that information from his client. The evidence supports neither of these explanations. It would appear that the meeting between Cooke and Bennett took place almost immediately after Bennett excused himself from Judge Gormley's chambers. It is, therefore, incredible that an attorney would have forgotten the singular purpose for which he had excused himself. Moreover, when he returned to Gormley's chambers, the pre-trial ended with the case remaining on trial status which is corroborative of a rejected offer. The evidence further negates any intentional misconduct on the part of Bennett. As previously discussed, Bennett did not want to try this case in the first place. The proffered disposition would at once favorably resolve his client's career concerns and criminal problems as well as relieve the attorney of the burden of preparing his case for trial which at that time would have required a Herculean effort on his part considering its state of unpreparedness. Since neither explanation is reconcilable with petitioner's claim that no offer was disclosed, this court is compelled to reject the petitioners account of the meeting.
However, most impressive of the objective evidence was the account of the sentencing hearing at which the petitioner was present with his attorney. [Tr. 2/22, p. 16] In accord with the rules of criminal practice the petitioner's attorney was permitted to address the court on sentencing issues. In the course of his remarks Bennett, in the presence of the petitioner, indicated, inter alia, that his client had chosen the trial route rather than a negotiated disposition on principal. CT Page 6676 [Sentencing, Tr. 5/25 p. 5] In the court's remarks addressed to the petitioner before passing sentence, Judge Gormley said:
 "I never thought Mr. Cooke as a result of this incident would be a candidate for jail and that is why initially the accelerated rehabilitation was offered. The reasons why he didn't accept that at the time are purely his and based on his own feelings. And I assume with the advice of his counsel. It was not in my view then and it is not in my view now — it was not the most intelligent choice he could have made under the circumstances. He chose the jury trial and that is a right that he had at the time and he exercised it" (Emphasis added.) [Sentencing Tr. 5/25, p. 9]
The petitioner neither sought to correct the Judge's reference to the offer of AR, his characterization of what prompted him to reject the AR offer, nor his reference to petitioner's poor judgment. Furthermore, he did not stop or question what his trial attorney told the court either during or after the sentencing hearing.[23] A reasonable person in Cooke's shoes would have protested such characterizations in some appropriate way unless he substantially agreed with those characterizations.
Cooke's attorney argued at the habeas hearing that because Mr. Cooke was not schooled in the law he was apprehensive to speak out at that time and this accounted for his silence. In view of this court's observation of Mr. Cooke's demeanor while testifying, that argument is not well taken. Throughout this proceeding, Mr. Cooke appeared to be keenly aware of the significance of the proceedings, impressed this court with his communicative skills and testified with confidence and self-assurance. Furthermore, he was a college graduate and had enjoyed a long career in a highly sophisticated field of securities. Under such circumstances it is difficult to believe that a person of his education, sophistication and self-assuredness would be unable to speak out either at the moment he heard Judge Gormley's remarks or, at least, bring such mischaracterization of events to the attention of his attorney following the hearing. He did neither.
Any one of the foregoing circumstances would justify the rejection of petitioner's account of what the true state of affairs was regarding the matter of disclosure of the plea bargain. However the sentencing event carries the most weight in this court's assessment. Moreover, when considered in aggregate they offer overwhelming justification for rejecting petitioner's version. CT Page 6677
This court therefore finds that the petitioner was informed by Bennett of the one-day AR offer in accordance with a criminal trial attorney's professional duty under law. Consequently, for all of the reasons herein expressed, this court concludes that the record will not support petitioner's constitutional claim of ineffective assistance of counsel on any of the grounds claimed. Accordingly, petitioner's Writ of HabeasCorpus is hereby DENIED.
MELVILLE, J.