08-1394-pr
Carlos Carrion v. Joseph Smith

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

—————————

August Term, 2008

(Argued: October 14, 2008                    Decided: December 8, 2008)

Docket No. 08-1394-pr

—————————

CARLOS CARRION,

*Petitioner-Appellee,*

—v.—

JOSEPH T. SMITH,

*Respondent-Appellant.*

—————————

B e f o r e :

LEVAL, KATZMANN, and LIVINGSTON, *Circuit Judges.*

—————————

Appeal from an opinion and order of the United States District Court for the Southern

District of New York (Scheindlin, *J.*), granting the petition for habeas corpus relief.  Because the

district court rejected the credibility determinations made by the magistrate judge without

holding its own evidentiary hearing, we vacate the ruling of the district court and remand this

case to the district court for further proceedings consistent with this opinion.

MARJORIE M. SMITH, Piermont, N.Y., *for Petitioner-Appellee.*

MARY C. FARRINGTON (Morrie I. Kleinbart, *of counsel*) *for* Robert M. Morgenthau, District Attorney, New York County, New York, N.Y., *for Respondent-Appellant.*

KATZMANN, *Circuit Judge*:

This case highlights a difficulty that our courts face in evaluating habeas corpus petitions filed well after the underlying conviction, when memories have faded and witnesses must struggle to reconstruct the relevant events. Over fifteen years ago, petitioner Carlos Carrion was convicted in the New York Supreme Court, New York County, of multiple offenses, including criminal possession of a controlled substance in the first degree and attempted murder, and sentenced to an indeterminate prison term of 125 years to life. In 2003, Carrion filed a petition for habeas corpus claiming that he had received ineffective assistance of counsel in connection with a plea deal that the state offered him, pursuant to which he would have been sentenced to an indeterminate prison term of ten years to life. At a hearing before a magistrate judge, the only witnesses to testify were Carrion, who presented his version of the events leading up to his decision to proceed to trial, and his trial counsel, who had an extremely limited recollection of Carrion's case and testified primarily to his typical established practice, which contradicted Carrion's version of the events in several meaningful respects. Relying on counsel's established practice and rejecting Carrion's account of the facts, the magistrate judge issued a report and recommendation recommending that Carrion's petition be denied. On review, the district court

expressed concern relating to counsel's inability to recall specifically the events of this case and granted the petition. In so ruling, the district court implicitly credited portions of Carrion's testimony that had been rejected by the magistrate judge. We write today to emphasize that district courts should normally conduct their own evidentiary hearings--wherein they observe the relevant testimony firsthand--before reaching independent credibility determinations. Because the district court made its own credibility finding without such a hearing, we vacate the judgment of the district court and remand this case for further findings of fact. We also conclude that it is permissible for a court to rely on habit evidence of a lawyer's usual practice in reconstructing events.

### BACKGROUND

On November 13, 1991, a police surveillance team followed a livery cab in which Carlos Carrion rode from the Bronx into Manhattan as part of an investigation conducted by the Manhattan North Narcotics Major Case Unit. After a high-speed pursuit and a collision, Carrion exited the car holding a nine millimeter semiautomatic gun and a shoulder bag. He fired several shots in the direction of the police, hitting a detective. The police fired back, and several bullets hit Carrion. When the police approached Carrion, they recovered the gun and the bag, which contained more than 11 pounds of cocaine. The gunshot wounds left Carrion permanently paralyzed.

A New York grand jury charged Carrion with conspiracy in the second degree, criminal possession of a controlled substance, twenty counts of attempted murder, criminal use of a firearm, two counts of criminal possession of a weapon, and reckless endangerment. The minimum sentence for the drug possession charge alone was fifteen years to life imprisonment.

The state offered Carrion a plea deal. Pursuant to the offer, Carrion would plead guilty to criminal possession of a controlled substance in the second degree in exchange for an indeterminate sentence of ten years to life imprisonment on the condition that Carrion allocute to all of the crimes charged in the indictment. Carrion declined the offer and proceeded to trial in the New York Supreme Court, New York County, before the Honorable Leslie Crocker Snyder. The jury found Carrion guilty of criminal possession of a controlled substance in the first degree, five counts of attempted murder in the first degree, criminal use of a firearm in the first degree, two counts of criminal possession of a weapon in the third degree, and reckless endangerment in the first degree. On December 10, 1993, Judge Snyder sentenced Carrion to an aggregate indeterminate prison term of 125 years to life.

On May 2, 2000, Carrion moved to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10, on the ground that he had been denied effective assistance of trial counsel. He contended, *inter alia*, that defense counsel failed to advise him of the consequences of declining the state's plea offer. In an order dated December 14, 2001, Judge Snyder denied the motion. Carrion filed a petition for a writ of error *coram nobis*, and that petition was denied. He sought leave to appeal the denial of his petition, and that application was denied as well.

Carrion then filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York (Scheindlin, *J.*), arguing, *inter alia*, that he was denied effective assistance of trial counsel because his lawyer failed fully to inform and advise him about the pretrial plea offer. Carrion claimed that his trial counsel's representation was insufficient in connection with the plea offer in two respects: (1) counsel failed to advise Carrion

-4-

of his maximum sentencing exposure, and (2) counsel did not urge Carrion to accept the proffered plea bargain. Judge Scheindlin referred the case to Magistrate Judge Maas to conduct an evidentiary hearing.

Magistrate Judge Maas held a hearing on Carrion's habeas petition on February 6, 2006. At the hearing two witnesses testified: Carrion and his trial counsel, Roy Kulcsar. Carrion testified that Kulcsar discussed the plea offer with him only once during a meeting that occurred in Bellevue Hospital. Carrion testified that at this meeting Kulcsar told him there was a plea offer: "[H]e told me that it was 10 to life, and I told him what he think about it? He said, it's my decision. And he thought that it was a good offer." According to Carrion, he was never informed what the maximum sentence could be if he were convicted of the charges against him, nor of the mandatory minimum sentences on the various charges. Carrion stated that Kulcsar did not discuss with him the likelihood that he would be convicted of the cocaine possession charge, or the fact that the charge carried a 15-year minimum sentence. Carrion also testified that in his initial meeting with Kulcsar, he told Kulcsar that he believed he had a legal defense to all of the charges against him because he was on the ground wounded when the police shot him in the back, causing the injury that paralyzed him. According to Carrion, Kulcsar allowed him to believe that he had a chance of prevailing, and so he declined the plea offer and went to trial.

When he testified before Judge Maas, Carrion's counsel, Kulcsar, had little recollection of Carrion's case, tried over twelve years earlier. Kulcsar testified that he was unable to locate the file from Carrion's case. He did not specifically remember any meetings with Carrion, whether he had a translator in communicating with Carrion, precisely what the charges were against Carrion, or what the sentence would be for someone convicted of possessing the amount

-5-

of cocaine that Carrion had possessed. Apart from his meeting with the lawyers on the habeas petition, Kulcsar had no independent recollection of the plea offer, but he stated that the instant proceeding had refreshed his recollection. When asked whether he remembered discussing the plea offer with Carrion, Kulcsar stated, "I recall discussing the plea offer with Mr. Carrion, but as I said, I did not recall until my recollection was refreshed as to the fact that it was a 10 to life offer. I certainly recall having discussions with him about a plea and a plea offer, and matters relating to a plea." Kulcsar did not recollect precisely when or where the discussions occurred. Kulcsar could not remember how many times he discussed the plea offer with Carrion, and he could not specifically recall what Carrion had said about the plea offer.

When asked whether he recalled making a recommendation to Carrion concerning the plea, Kulcsar explained that as a matter of practice he did not recommend to clients whether or not to take a plea. Kulcsar was asked whether he specifically discussed the various minimum sentences on the individual charges against Carrion, and he did not recall. He elaborated, "I do recall discussing a plea offer with him, and I would reasonably conclude that within the framework of that discussion, I would have discussed with him any aspects relating to sentencing. But if you're asking me do I specifically recall that, then in all candor I have to say that I do not specifically recall that." Kulcsar testified that he did not have a specific recollection but that there was no doubt in his mind that he discussed with Carrion Judge Snyder's reputation for imposing very severe sentences.

Magistrate Judge Maas issued a report and recommendation, dated January 25, 2007, recommending that Carrion's habeas petition be denied on the merits. Relying on Kulcsar's testimony concerning his established practice, Judge Maas rejected Carrion's assertions as

incredible and found that Kulcsar had advised him of the possibility of a very lengthy minimum sentence if he proceeded to trial. With respect to the claim that Kulcsar did not sufficiently urge Carrion to accept the plea offer, Judge Maas found that, "while Mr. Kulcsar's advice may have left something to be desired, Carrion is not entitled to have his sentence set aside based upon ineffective assistance of counsel."

Carrion objected to the report and recommendation in its entirety, and the state submitted a response to the objections asking the district court to adopt it in full and dismiss the petition. Judge Scheindlin issued an opinion dated February 22, 2008, stating that she "disagree[d] with the conclusions reached by the Magistrate Judge regarding the effectiveness of Kulcsar's representation," and granting Carrion's habeas corpus petition. Judge Scheindlin held that "[t]he appropriate remedy here is to give Carrion the benefit of the original plea offer and re-sentence him accordingly." The district court entered final judgment on February 25, 2008.

### DISCUSSION

As a preliminary matter, we see no merit in the state's argument that the district court was barred from considering Carrion's claim of ineffective assistance because Judge Snyder denied the section 440.10 motion based on a state-law procedural ground. *See Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) ("Ordinarily, a federal habeas court may not reach the merits if the state court's rejection of a federal claim 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991))). The state suggests that the basis for the New York Supreme Court's decision was New York Criminal Procedure Law § 440.30(4)(b) and (d), which allow a court to deny a section 440.10 motion without conducting a hearing if "[t]he motion is based upon the existence or

-7-

occurrence of facts and the moving papers do not contain sworn allegations substantiating or

tending to substantiate all the essential facts," or "[a]n allegation of fact essential to support the

motion (i) is contradicted by a court record or other official document, or is made solely by the

defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the

other circumstances attending the case, there is no reasonable possibility that such allegation is

true." However, Judge Snyder's order on the section 440.10 motion states, "[i]n analyzing the

circumstances of this case, the court finds that under both the federal and state standards, the

defendant received effective representation." Thus, Judge Snyder appears to have reached the

claim that Carrion received ineffective representation on the merits, and the district court did not

err in doing the same. *See Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006) ("The

preclusion of federal review applies only when 'the last state court rendering a judgment in the

case clearly and expressly states that its judgment rests on a state procedural bar.'" (quoting

*Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996))).[1]

Turning to the district court's opinion and order, "[w]e review a district court's decision

to grant or deny a habeas petition *de novo* and its findings of fact for clear error." *Hemstreet v.*

*Greiner*, 491 F.3d 84, 89 (2d Cir. 2007). Under the Antiterrorism and Effective Death Penalty

Act of 1996, a federal court may not grant a writ of habeas corpus to a state prisoner "on a claim

---

[1] Contrary to the state's suggestion, Judge Snyder's denial of Carrion's "remaining arguments" for "the reasons set forth by the People in their response," does not imply that she relied on the procedural arguments raised by the state as the basis for disposing of the ineffective assistance claim. *See Messiah v. Duncan*, 435 F.3d at 195 ("It must be clear from the face of the opinion that the court intended to rely on the state procedural rule in disposing of the federal claim." (internal quotation marks omitted)).

that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Pursuant to the test put forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 688 (1984), "[a] defendant claiming ineffective assistance must (1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms;' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 688, 693). "[T]he burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).

Pursuant to 28 U.S.C. § 636(b)(1), Judge Scheindlin reviewed Judge Maas's report and recommendation *de novo*, and we will not find clear error in her findings of fact merely because she parted ways with Judge Maas. That said, because she did not conduct her own evidentiary hearing, Judge Scheindlin was limited in her ability to find facts: "[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999); *see also Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989) ("Had the district court rejected the magistrate's conclusions regarding the credibility of the central witnesses without hearing live testimony from those witnesses, troubling questions of constitutional due process would have been raised."); *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001) (per curiam) ("[T]his Court has held that generally a district court must rehear the disputed testimony before rejecting a magistrate judge's credibility determinations.").

In this case, Judge Maas determined, based on what Kulcsar testified to be his established practice, that Kulcsar advised Carrion of the sentencing exposure he faced if he went to trial. Judge Maas rejected Carrion's account of Kulcsar's communications concerning the possible sentence. And Carrion's testimony was the only evidence in the record that supported his version of the facts on this point. Thus, in determining that Kulcsar did not advise Carrion of his sentencing exposure, Judge Scheindlin necessarily credited Carrion's testimony. Although this credibility determination is not explicit in the district court's opinion (indeed, Judge Scheindlin specifically asserts that she did not make any independent findings with respect to witness credibility), it inherently underlies the district court's determination, because Carrion testified to certain facts upon which his petition depended, the magistrate judge discredited this testimony finding that the facts were otherwise, and the district court found, contrary to the magistrate judge's determination, that the facts were as Carrion asserted.

Likewise, Carrion's testimony was the only evidence in the record that he believed he had a complete defense to the crimes charged (based on police misconduct) and that Kulcsar permitted him to proceed to trial under this mistaken belief of law.[2] Judge Maas rejected Carrion's contention. But the district court implicitly credited Carrion's testimony, determining that Kulcsar "made no efforts . . . to dispel his belief that the shooting established a viable

---

[2] Carrion suggests that his account is corroborated by the transcript from his sentencing, during which Kulcsar explained that, but for Carrion's desire to establish that he was already on the ground when the police officer shot him, "he would have plead guilty." There are any number of reasons, such as Carrion's ongoing civil suit against the city or the notion that a jury might nullify out of sympathy for a defendant injured in such a circumstance, that might have motivated Carrion to proceed to trial. The mere fact that Kulcsar stated that Carrion would have pleaded guilty if not for his belief that evidence existed that would corroborate his account of his injury does not establish that Kulcsar allowed Carrion mistakenly to believe that he had a legal defense to charges against him.

-10-

defense." Pursuant to *Cullen*, the district court should have held its own evidentiary hearing before overturning Judge Maas's credibility determinations.

Judge Scheindlin cites Kulcsar's testimony in connection with her determination of the legal defense issue, but the evidence she highlights does not actually support her finding of fact. According to Judge Scheindlin, Kulcsar "equivocated" when he was asked whether Carrion told him that he believed he had a legal defense to all charges against him because he was shot in the back. The testimony she cites, however, is unequivocal. Kulcsar stated:

> I don't think we discussed it from the [perspective] of it being a defense to the charges against him. I think we discussed it from a [perspective] of the fact that the allegations against him concerning his attempted murders of police officers and the shooting was significantly different from the police version of the incident. I mean, to that extent as a defense, yes. The mere fact that he was shot and paralyzed we didn't discuss that as some kind of defense.

Nothing in this testimony in any way supports the conclusion that Kulcsar knowingly allowed Carrion to believe that his allegations of police misconduct amounted to a legal defense to all charges against him. The district court also relied on statements Kulscar made to the judge at Carrion's sentencing to the effect that Carrion was motivated to go to trial, rather than plead, by his belief that the paralyzing injury inflicted on him by police shots might help him at trial. These statements, which were made many months after the withdrawal of the plea offer, indicate nothing more than that Kulscar was aware at a much later date that Carrion hoped his injuries would work to his advantage at trial. They do not support the far more extreme finding that Carrion believed his injury constituted a defense of law, much less that Kulscar was aware at the time of the plea offer that his client entertained such an erroneous belief but failed to correct him. Furthermore, while Carrion initially testified that he told Kulscar that he thought he had a legal defense and that Kulscar failed to correct it, on cross-examination Carrion substantially retracted

-11-

the assertion, admitting that he did not remember what Kulscar said. In our view, there is no basis in the record established before the magistrate judge which could support the district court's conclusion that Kulscar knowingly allowed Carrion to proceed to trial under a mistaken belief that his injury constituted a legal defense.

We are concerned about another aspect of the district court's finding of facts. Judge Scheindlin suggests that she has rejected Judge Maas's conclusion that Kulcsar warned Carrion about his sentencing exposure in part because Judge Maas relied on Kulcsar's testimony of his "established practice."[3] We see no error in Judge Maas's reliance on Kulcsar's testimony concerning his usual practice, particularly in light of the fact that Kulcsar was being asked to remember events that occurred over twelve years earlier. As we have said, "[t]ime inevitably fogs the memory of busy attorneys. That inevitability does not reverse the *Strickland* presumption of effective performance." *Greiner v. Wells*, 417 F.3d 305, 326 (2d Cir. 2005). Indeed, the Federal Rules of Evidence allow habit evidence to be used "to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice," Fed. R. Evid. 406, and courts have relied on such evidence in habeas corpus proceedings to find effective assistance of counsel. *See, e.g.*, *United States v. Arredondo*, 349 F.3d 310, 315-16 (6th Cir. 2003). Thus, while neither Judge Maas nor Judge Scheindlin was *required* to conclude from Kulcsar's testimony of his usual practice that Kulcsar advised Carrion of his sentencing exposure, it was permissible for either of them to do so.

---

[3] The district court's opinion does not specifically state that testimony of established practice cannot support a factual determination. Rather, the opinion lists the fact that Judge Maas credited Kulcsar's testimony of his established practice among the "several reasons" why Judge Scheindlin disagrees with Judge Maas's conclusion.

In sum, we find that the district court erred in concluding that at the time of Carrion's rejection of the plea offer Mr. Kulscar learned, but failed to correct, Carrion's mistaken belief that his injury inflicted by the police constituted a legal defense.  There was simply no basis in the record to support this conclusion.  As for Carrion's claim that Kulscar failed to advise him of his sentencing exposure, the district judge erred by making her own credibility findings contrary to those made by the magistrate judge without hearing the witnesses herself.  For the district court, upon remand, to adhere to its own credibility conclusions, as opposed to those found by the magistrate judge, the district court would need to conduct a renewed hearing to appraise the credibility of the witnesses.  Accordingly, we vacate the district court's judgment and remand for the district court either to enter judgment in accordance with the magistrate judge's findings, or to conduct a new hearing as a basis for whatever findings the court may then make.  *See Cullen*, 194 F.3d at 408.

In light of the clear error in the district court's finding of facts, we are unable to review the legal determination that Kulcsar's failure to "vigorously advise his client" to take the plea offer constituted "constitutionally deficient" counsel.   While there may perhaps be circumstances where the disparity between the sentence offered under a plea agreement and the sentencing exposure in the absence of such an agreement (factoring in both the probable sentence and the likelihood of conviction) might require counsel to give advice about the benefits and risks of accepting or not accepting a plea offer beyond merely stating the sentencing exposure, without a proper determination of the facts we are unable to "judge the reasonableness of counsel's challenged conduct on the facts of [this] particular case."  *Purdy v. United States*, 208

F.3d 41, 48 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 690).[4]

## CONCLUSION

For the foregoing reasons, we VACATE the district court's February 25, 2008 order and

REMAND this case to the district court for further proceedings consistent with this opinion.

---

[4] We note a further potential problem in three aspects in the district court's reasoning. After reviewing *Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996), and other circuit court precedents, the court stated, "The instant case is quite similar to . . . *Boria*" and went on to conclude that Kulscar's performance was deficient, with consequences that prejudiced Carrion. The court summed up the issue saying, "In sum, having found both inadequate representation and prejudice, the inevitable conclusion is that the state-court decision rejecting Carrion's ineffective assistance of counsel claim constitutes an unreasonable application of federal law."

First, this case is different from *Boria*. In *Boria*, where the defendant rejected the plea offer, counsel, who was found ineffective, "never gave his client any advice or suggestion as to how to deal with the People's offered plea bargain." *Id.* at 498. In the present case, in contrast, regardless of whether Kulscar told his client the sentencing exposure, the district court credited that he told his client that the offer was a "good offer." Accordingly, this case does not fall within the *Boria* precedent. To find Kulscar's advice ineffective would represent a further extension of *Boria*. We make no implication at this time whether the advice given by Kulscar comported with constitutional obligations or whether a further extension of *Boria* is warranted. Our point is merely that this case is not within scope of the ruling in *Boria*.

Second, we believe the district court erred in its understanding of the standard imposed by AEDPA. Based on its finding of "inadequate representation and prejudice," the district court believed an "inevitable conclusion" followed "that the state-court decision rejecting Carrion's ineffective assistance of counsel claim constitutes an unreasonable application of federal law." Prior to AEDPA, it sufficed for a grant of habeas for a federal court to conclude that the petitioner was denied adequate representation and suffered prejudice, within the meaning of *Strickland*. AEDPA, however, requires more than a conclusion that counsel's performance was constitutionally inadequate. Under the AEDPA standard, "objectively unreasonable application involves some increment of incorrectness beyond error." *Hemstreet v. Greiner*, 491 F.3d 84, 90 (2d Cir. 2007). Habeas may not be granted unless the federal court concludes not only that counsel's performance was deficient, but also that the state court's conclusion to the contrary was *unreasonable*. Satisfaction of the "unreasonable application " requirement does not follow *inevitably* from the district court's conclusion that Kulscar's performance was deficient. The court was not at liberty under AEDPA to grant habeas relief unless it made the further finding that the state court's application of *Strickland* was unreasonable.

Finally, we cannot tell whether the district court recognized that *Boria*, being a pre-AEDPA case, turned on a different standard. We do not imply that a pre-AEDPA case could not serve as a precedent in determining whether a petitioner received effective assistance of counsel. The point is simply that a pre-AEDPA ruling to the effect that a representation was inadequate does not by itself furnish the answer to the further question raised by AEDPA – whether the state court's ruling to the contrary was unreasonable.