[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2009
THOMAS K. KAHN
CLERK

No. 08-10363

_____

D.C. Docket No. 04-00498-CV-J-32-JRK

CORNELIUS VERSHANT DASHER,

Petitioner-Appellant,

versus

ATTORNEY GENERAL, STATE OF FLORIDA,
JIM WITT,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 13, 2009)

Before BIRCH and BARKETT, Circuit Judges, and KORMAN,[*] District Judge.

KORMAN, District Judge:

_____

[*] The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

Cornelius V. Dasher pled guilty to a one-count State of Florida information charging him with possession of cocaine with intent to sell within 1000 feet of a church. Fla. Stat. § 893.13(1)E(1) (2008). Prior to pleading, his attorney had obtained a promise from Judge Foster, the sentencing judge, that Dasher would be sentenced to thirteen months in a Florida State prison if he pled guilty. Dasher advised his attorney that he preferred a twelve month sentence, which he could have served in a county jail. Because Judge Foster had indicated that he would go no lower than thirteen months, Dasher's attorney advised him that, other than a trial at which the evidence would be overwhelming, the only way to obtain a lower sentence was to plead guilty "straight up" without any agreement "and we'll have to put on some mitigation and hope that that will convince the judge that the 13 month offer that he made was a little high." Dasher's attorney told him that, if he pled straight up, he "doubted that [Dasher] would get anything over 13 months, and if he did, it would be very little over the 13 months, because that was Judge Foster's offer as opposed to the State offer." Indeed, he believed that, even if Judge Foster "disregarded whatever mitigation that we could bring forth at the sentencing hearing, that he would get the 13 months."

Based on the advice of his attorney, and on the very same day, Dasher rejected the thirteen month plea offer and pled guilty without any agreement. Subsequently,

2

Judge Foster sentenced Dasher to a period of ten years incarceration. The sentence was meted out because the presentence report that was prepared at the request of his attorney indicated that Dasher had numerous juvenile convictions and arrests, along with several adult felony and misdemeanor convictions. The presentence report went on to observe that Dasher was a career felony offender and to recommend a sentence of twenty years imprisonment.

Dasher then filed a motion to withdraw his guilty plea on the ground that it was "not knowingly and voluntarily entered because it was entered in reliance on his attorney's misadvice, or erroneous advice regarding the sentence that would be imposed." Dasher's motion was ultimately denied in a summary order and affirmed in a similar fashion. *Dasher v. State*, 871 So.2d 207 (Fla. Dist. Ct. App. 2004). Subsequently, Dasher filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Florida, alleging that his sentence was the result of the ineffective assistance of counsel that he had received. The petition was denied, although the district judge was sufficiently troubled to grant a certificate of appealability.

## Discussion

We pass over the procedural history of this case, which included two appeals to the Florida District Court of Appeals before an evidentiary hearing was ordered,

3

and an additional appeal from the denial of his motion to withdraw his plea of guilty after the hearing. *Dasher*, 871 So.2d at 207; *Dasher v. State,* 845 So.2d 252 (Fla. Dist. Ct. App. 2003); *Dasher v. State,* 825 So.2d 371 (Fla. Dist. Ct. App. 2002). The principal issue on this appeal turns on whether Dasher was deprived of the effective assistance of counsel because of the alleged failure of his attorney to adequately investigate his prior criminal record before advising him that he could reasonably expect to obtain a sentence of twelve months and that, in the worst case scenario, he would not receive much more than thirteen months if he pled guilty straight up.

The State of Florida argues that Dasher's attorney cannot be faulted for the advice he gave, because Dasher did not disclose to his attorney that he had any prior record. Dasher testified at the post-conviction hearing that his attorney "[n]ever asked . . . what [his] past record was," although he acknowledged a conversation in which he told his attorney he had previously been convicted of possession of drugs. Moreover, while Dasher's attorney could not recall a specific conversation that he had with Dasher about his criminal history, he testified that "[i]t would be unusual for me not to ask a client . . . do you have a prior record." Indeed, he later gave the following response to the question whether "[a]s a normal practice, you ask a defendant whether in fact he's ever been to prison or has a felony record":

I'm sure I—I'm sure that I did, you know, and in this case—I mean, obviously

4

that goes in the plea negotiations, you know, whether or not you can ask for—reasonably ask for a withhold of adjudication, et cetera. So I'm sure at some point in time Mr. Dasher and I must have had some discussion about his record and, at the very least, his drug related record.

Our review of the record persuades us that the testimony at the post-conviction hearing conducted in Florida, which focused on the factual basis underlying counsel's erroneous advice regarding the sentence that would be imposed, supports the implicit finding that Dasher failed to disclose his criminal record to his attorney. While the parties agree that, under our precedent, federal habeas courts must defer to the state court's reasonable factual determinations, even in the case of summary adjudications unaccompanied by any express findings of fact, *Blankenship v. Hall,* 542 F.3d 1253, 1271 (11th Cir. 2008), petitioner argues that deference to the finding of the state court here is not required because, at the evidentiary hearing, petitioner's attorney testified that he did not have a specific recollection of ever discussing Dasher's criminal history with him prior to the guilty plea. Nor was he willing to suggest that Dasher had lied to him about his criminal history.

This argument overlooks the fact that three years had elapsed from the date of the plea to the date of the hearing at which Dasher's attorney testified, as well as the case law holding that "professional people should be able to prove the manner in which they routinely handle matters that recur in their work, in order to show that

5

they followed that routine in a particular instance." Christopher B. Mueller & Laird C. Kirkpatrick, 2 Federal Evidence 59 (3d ed. 2007). *Carrion v. Smith*, 549 F.3d 583 (2d Cir. 2008), is particularly apposite. There, the issue was whether petitioner's counsel had advised him of the consequences he faced if he declined the plea offer of the district attorney. The United States magistrate judge, to whom the habeas corpus petition had been referred, concluded that petitioner's attorney had provided such advice. In so doing, he relied on the attorney's testimony concerning his usual practice. The district court rejected this finding, in part because the magistrate had relied on the testimony of petitioner's attorney regarding his usual practice. *Id.* at 590.

In reversing the district court, the Second Circuit held that the United States magistrate judge did not err in relying on the attorney's testimony concerning his usual practice, particularly in light of the fact that the attorney was being asked to remember events that had occurred twelve years earlier. In so doing, the Second Circuit reiterated an earlier holding that "[t]ime inevitably fogs the memory of busy attorneys. That inevitability does not reverse the *Strickland* presumption of effective performance." *Id.* (alteration in original). Moreover, it went on to observe that "the Federal Rules of Evidence allow habit evidence to be used 'to prove that the conduct of the person or organization on a particular occasion was in conformity with the

6

habit or routine practice,' Fed.R.Evid. 406, and courts have relied on such evidence in habeas corpus proceedings to find effective assistance of counsel." *Id.* (citing *United States v. Arredondo,* 349 F.3d 310, 315-16 (6th Cir. 2003)). Of course, the fact that the evidence was admissible did not require the district judge or the magistrate to conclude from the attorney's testimony that he advised petitioner of his sentencing exposure. Nevertheless, "it was permissible for either of them to do so." *Carrion*, 549 F.3d at 590.

Significantly, in this case Dasher testified that he told his attorney that he had a prior conviction for possession of cocaine, an admission which provides additional support for the implicit finding that his attorney asked him about his prior criminal record. Under these circumstances, we cannot say that the decision of the Florida courts "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (2006).

Dasher argues that, even if he did not fully or accurately disclose his prior criminal record to his attorney, the latter was not justified in relying upon the information Dasher provided. Instead, he argues that his attorney was obligated to undertake an independent investigation of his prior record. This argument cannot survive the hurdle posed by the deferential standard of review mandated by 28 U.S.C. § 2254(d)(1), which reads as follows:

7

An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Because the Supreme Court has never held that an attorney could not justifiably rely on criminal history information provided by his client, Dasher can prevail here only if he can show that the rejection of this claim by the Florida District Court of Appeal constituted an objectively unreasonable application of Supreme Court law relating to the Sixth Amendment right to the effective assistance of counsel. In determining the objective reasonableness of a state court holding, the Supreme Court has explained that

> the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

*Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004).

The relevant rule at issue here is a general rule of the kind in which state courts have "more leeway . . . in reaching outcomes in case-by-case determinations." Specifically, the Supreme Court has "declined to articulate specific guidelines for

8

appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland v. Washington,* 466 U.S. 668, 688 (1984)).

Moreover, we have held "that reliance on a client's statements is [not] per se deficient performance," *United States v. Pease*, 240 F.3d 938, 942 (11th Cir. 2001). Indeed, we have said that "a determination of whether reliance on a client's statement of his own criminal history constitutes deficient performance depends on the peculiar facts and circumstances of each case." *Id.; see also Strickland*, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Indeed, the Supreme Court has held that counsel need not undertake investigations if they reach "a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

The record here indicates that, after viewing a videotape of the drug distribution that was the subject of the indictment, petitioner's attorney entered into plea negotiations on behalf of Dasher and dozens of other clients he had been representing. The state's best offer to Dasher was two years in a Florida state prison. Dasher's attorney testified that the negotiations in Dasher's and other cases broke

9

down,

> so at some point in time Judge Foster called the State Attorney's Office and myself and there was at least one representatives of the Sheriff's Office . . . and we met in Judge Foster's chambers. And based on representations as to the individual's involvement, *the individual's particular record*, et cetera, Judge Foster made certain offers also to the defendants, which were—were better than the offers made by the State.

"[T]he State had the [National Crime Information Center (NCIC)] printouts there with them, so the fact that the State didn't say, this guy has got a ton—a ton of prior felonies would indicate to me that he didn't." Indeed, his notes of the meeting in the judge's chamber indicated only that Dasher had a number of misdemeanors. The initial offer of a two-year sentence made by the prosecutor also indicated that Dasher had a minimal criminal record,

> as opposed to some of the other offers that they were making for some individuals . . . that I was aware of, that had any prior felony convictions. And, in fact, that's what was related to me; this is their third conviction or whatever; therefore, their offer is three years or something like that.

Indeed, most of the plea offers that the State was making to his other clients were in excess of two years.

In sum, this was not a case involving an attorney's exclusive "reliance on a client's statement of his own criminal history." *Pease*, 240 F.3d at 942. Nor was it necessarily unreasonable for Dasher's attorney to rely on the same information that led Judge Foster to offer an extraordinarily favorable disposition, upon which the

record suggests he was prepared to act without a presentence report. Unlike *Esslinger v. Davis*, 44 F.3d 1515, 1529 (11th Cir. 1995), a habeas corpus case preceding the enactment of the deferential standard of review prescribed by 28 U.S.C. § 2254(d)(1), the record does not suggest any avenue that Dasher's attorney failed to pursue, which he knew would have disclosed his client's complete criminal history. On the contrary, Dasher's attorney testified without contradiction that he could not have obtained access to the NCIC records. The only additional inquiry that Dasher now suggests is that his attorney should have searched the records in the Nassau County Circuit Court, where the proceedings against him were conducted, because, as it turned out, some of his prior record would have been reflected there. Such an inquiry is a hit-or-miss proposition of the kind we are unable to say a defense attorney was obligated to undertake in the circumstances here. Indeed, it would not have led to the disclosure of Dasher's complete criminal history.

On this record, even if this were a direct appeal from a judgment of conviction, it would be difficult to say that defense counsel's reliance on information apparently in the hands of the prosecutor, and the extraordinarily lenient plea offer on which it was based, not to speak of his client's representations, constituted the ineffective assistance of counsel. Indeed, *United States v. Pease*, which we decided on direct appeal, is almost precisely on point. The issue in that case turned on whether the

11

erroneous advice the defendant received regarding the sentence he faced if he pled guilty entitled him to withdraw his plea of guilty. It was conceded that the defendant's attorney did not run a criminal history category check, but relied instead on the defendant's representations in advising him of the sentence he faced. Nevertheless, we held that "[w]hile the limited scope of this investigation is certainly not laudatory, we cannot say as a matter of law that reliance on a client's statements is per se deficient performance." *Pease*, 240 F.3d at 941-42.

This holding applies with greater force here because Dasher's attorney did not rely only on his client's statements, and because of the deferential standard of review that we are required to give to the determination of the Florida courts on this issue. Simply stated, we are unable to say that "in rejecting his ineffective assistance of counsel claim [based on his attorney's failure to investigate his criminal record] the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004) (internal quotations omitted). Nor is this deferential standard undermined by the summary disposition of petitioner's ineffective assistance of counsel claim. *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1255-56 (11th Cir. 2002).

Nevertheless, even if the information upon which Dasher's attorney relied were accurate, the advice he gave to Dasher was a piece of foolishness. There was

12

simply no chance that, if he took a plea straight up, Dasher would have received a sentence of twelve months or little more than thirteen months. Judge Foster was apparently giving away the store because of an unusual backlog of cases that had developed. Indeed, Dasher's attorney testified that it was "very rare, and especially for Judge Foster" to make an offer or participate in plea negotiations. The reason that he did so here was that

> there was such a backlog of cases. The county had a big bust where they had arrested, I want to say, 50 some odd people. Shortly thereafter in Fernandina Beach they had a big bust too. So the criminal calendar in a short period of time at least doubled, and probably tripled. The Sheriff had the jails full and we had to take people to other counties and house them.

Once Dasher pled guilty straight up, Judge Foster had no reason to give him the thirteen month sentence he offered to induce a plea. Indeed, Dasher's attorney knew that he at least had some prior misdemeanor convictions, and that he intended to enter a plea of guilty to two counts of battery in a detention facility, a felony under Florida law, Fla. Stat. § 784.082 (2008). The latter plea was pursuant to a promise by Judge Foster that he would receive a "suspended sentence with adjudication withheld, to one hundred and forty-six days" with credit for time served. While Dasher was represented by another attorney in that case, the plea was entered in the same proceeding at which Dasher pled guilty to the charge at issue here, and he was sentenced as promised at the same proceeding without any probation report. Judge

13

Foster would later include this plea in the long list of petitioner's prior convictions upon which he relied upon in imposing a ten year sentence.

Perhaps more significantly, Judge Foster was unwilling to offer less than thirteen months even under the unusual circumstances that involved him in the plea bargaining process, and the prosecutor had declined to offer a plea that would have required less than a two year sentence. Moreover, although Dasher's counsel had alluded to mitigating factors that could result in a twelve month sentence that Dasher was seeking, it was obvious that he was not then aware of any.

Finally, while Dasher's attorney advised him of the risks of going to trial, namely, he could be sentenced to substantially more time, he did not advise him of any risks regarding entering a plea straight up and he acknowledged that "in hindsight, I guess maybe I should have been . . . more careful about that." Nor was this failure cured by Judge Foster's advice during the plea colloquy that he had "total discretion" to sentence Dasher to as much as thirty years in prison. The fact that Dasher was aware of the discretion Judge Foster had does not necessarily establish that he understood the likelihood that the discretion would be exercised in a manner that was contrary to the advice that he had concededly received from his attorney. As Dasher explained, "[m]y lawyer already told me what time I would get, so I ain't worried about it. I wasn't worried about getting any more time than thirteen

14

months." *Compare Pease*, 240 F.3d at 941 (where the defendant was advised that "the sentence actually imposed by the Court may be different from any estimate or prediction about [his] guideline sentence that anybody [had] provided [the defendant], including [his] attorney.").

We do not suggest that there are no circumstances where it would be reasonable for a lawyer to advise his client to plead guilty without an agreement and throw himself at the mercy of the judge. But this was not such a case. Whether or not he had a lengthy prior criminal record, Dasher was clearly risking a sentence of substantially more than thirteen months, and there was certainly no reason to believe he would do better.

Because we conclude that Dasher's counsel gave plainly inadequate advice, Dasher is entitled to relief. Dasher has served all but five months of his sentence and he does not seek to withdraw his plea. Instead, he seeks "specific performance" of the plea agreement which he rejected. We think that the more appropriate remedy is to modify his sentence to time served. *See, e.g., Boria v. Keane,* 99 F.3d 492, 498-99 (2d Cir. 1996) (reducing sentence to time served and discharging petitioner from prison because he had already served sentence "at least twice as long as would have been possible" if ineffective trial counsel had persuaded him to accept plea offer); *see also Williams v. Singletary*, 78 F.3d 1510, 1516-17 (11th Cir. 1996)

15

(unconstitutional imposition of cumulative sentences for single incident of criminal behavior required vacating of one sentence and crediting of time already served to other sentence). Our discretion to formulate such a remedy, without disturbing the judgment of conviction, derives from 28 U.S.C. § 2243, which authorizes federal habeas courts to "dispose of the matter as law and justice requires." *See generally, Wilkinson v. Dotson,* 544 U.S. 74, 85 (2005) (Scalia, *J.*, concurring); Randy Hertz & James S. Liebman, 2 Federal Habeas Corpus Practice and Procedure 1677 *et seq*. (5th ed. 2005).

## Conclusion

We vacate the order appealed from and remand to the district court for entry of an order granting the petition and directing that the petitioner be discharged without disturbing the judgment of conviction.