**Floyd MARTIN, Petitioner,**

v.

**James T. CONWAY, Respondent.**

**No. 10–CV–6189L.**

United States District Court,
W.D. New York.

Feb. 10, 2011.

Floyd Martin, Attica, NY, pro se.

Donna A. Milling, Buffalo, NY, for Respondent.

## DECISION AND ORDER

DAVID G. LARIMER, District Judge.

### I. Introduction

Petitioner *pro se* Floyd Martin ("Petitioner" or "Martin") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his detention in state custody. Martin's incarceration arises from a judgment of conviction entered against him in Erie County Court following a guilty plea on charges of attempted murder and other charges. (Docket No. 1). Respondent has answered the petition and filed a memorandum of law in opposition. Presently pending before the Court is Martin's motion to amend the petition and to have the petition held in abeyance.

For the reasons that follow, the petition is denied and the motion to amend is denied.

### II. Factual Background and Procedural History

Under Indictment No. 01679–2005, Martin was charged as an accomplice, along with co-defendants Leon Williams ("Williams") and Arhan Castillo ("Castillo"), with attempted murder in the first degree (New York Penal Law ("P.L.") §§ 110/125.27(1)(a)(vii), 20.00); attempted murder in the second degree (P.L. §§ 110/125.25(1), 20.00); assault in the first degree (P.L. §§ 120.10(1), 20.00); kidnapping in the second degree (Penal Law §§ 135.20, 20.00); robbery in the first degree (Penal Law §§ 160.15(2), 20.00); unauthorized use of a vehicle in the first degree (Penal Law §§ 165.08, 20.00); criminal use of a firearm in the first degree (P.L. § 265.09(1)(a)); and criminally using drug paraphernalia in the second degree (P.L. § 220.50(2)). The trial court dismissed the charge of criminally using drug paraphernalia.

With the advice of counsel, Martin pleaded guilty as charged to the remaining seven counts in the indictment. Under Indictment No. 02885–2005, petitioner was charged with two counts of criminal possession of a weapon in the third degree (P.L. § 265.02(3), (4)).

Under another indictment, Indictment No. 02885–2005, he was charged with two counts of criminal possession of a weapon in the third degree (P.L. § 265.02(3), (4)). Martin pleaded guilty to these counts as well. He was subsequently sentenced as follows on Indictment No. 01679–2005: 15 years to life (attempted murder in the first degree); 10 years, 5 years post release supervision (attempted murder in the second degree); 10 years, 5 years post release supervision (assault in the first degree); 10 years, 5 years post release supervision (kidnapping in the second degree); 10 years, 5 years post release supervision (robbery in the first degree); 2 1/3 to 7 years (unauthorized use of a vehicle in the first degree); and 10 years, 5 years post release supervision (criminal use of a firearm in the first degree).

With regard to Indictment No. 02885–2005, he was sentenced as follows: 2 1/3 to 7 years (criminal possession of a weapon third degree); and 4 years, 3 years post release supervision. (criminal possession of a weapon third degree). The sentences imposed on both indictments were ordered to be served concurrently. The aggregate sentence was thus 15 years to life, plus 5 years post release supervision.

Petitioner filed a timely Notice of Appeal. His convictions under both indictments were unanimously affirmed in a order of the Appellate Division, Fourth Department. *People v. Martin*, 55 A.D.3d 1236, 864 N.Y.S.2d 582 (App.Div. 4th Dept.2008). Leave to the appeal to the Court of Appeals was denied. *People v. Martin*, 11 N.Y.3d 927, 874 N.Y.S.2d 12, 902 N.E.2d 446 (N.Y.2009), as was the request for reconsideration, *People v. Martin*, 12 N.Y.3d 855, 881 N.Y.S.2d 667, 909 N.E.2d 590 (N.Y.2009).

This timely habeas petition followed in which Martin has asserted the following grounds for relief: (1) trial counsel's actions at the plea proceeding violated the basic canons of advocacy by presenting at length the weaknesses of Martin's case, amounted in an abandonment of his client at a critical juncture, and resulted in a coerced, involuntary plea; and (2) Martin's post-arrest statements were involuntary and should have been suppressed. *See* Attachment # 4 to Petition (Docket No. 1).

Respondent answered the petition. (Docket Nos. 6 & 7).

Martin currently has pending a motion to stay the petition and a motion for an extension of time to file a reply memorandum of law. Respondent has not filed opposition papers with regard to either of these motions.

For the reasons that follow, the petition is dismissed. The motion to stay is denied with prejudice. The motion for an extension of time is granted *nunc pro tunc*.

## III. Discussion

### Legal Standard of Review

■ Federal habeas review is available for a State prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not subject to federal habeas review. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

Because Martin's petition, filed in 2010, postdates the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (codified as amended in scattered titles of the U.S.C.), AEDPA's revisions of 28 U.S.C. § 2254 govern the proceeding. *Lurie v. Wittner*, 228 F.3d 113, 120–21 (2d Cir.2000) (citing *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000); *Lindh v. Murphy*, 521 U.S. 320, 322–23, 117 S.Ct. 2059, 2061, 138 L.Ed.2d 481 (1997); *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir.1998)). The Second Circuit has summarized the requirements placed upon a habeas petitioner by the AEDPA standard as follows:

Under AEDPA, to prevail on a petition for a writ of habeas corpus, a petitioner confined pursuant to a state court judgment must show that the court's "adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[C]learly established Federal law" refers to holdings of the Supreme Court, as opposed to dicta, as of the time of relevant state court decisions. *Carey v. Musladin*, 549 U.S. 70, 74–75, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006); *Williams*

*v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. An "unreasonable application" occurs when a "state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* "Unreasonableness is determined by an 'objective' standard." *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir.2005) (quoting *Williams*, 529 U.S. at 409, 120 S.Ct. 1495).

*Friedman v. Rehal*, 618 F.3d 142, 152–153 (2d Cir.2010) (Korman, D.J., sitting by designation).

■ The Supreme Court has stated that "unreasonableness" should not be conflated with "clear error" because "[t]he gloss of clear error fails to give proper deference to state courts." *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir.2001). However, "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Matter of Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

■ "[A] 'state court adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Jimenez v. Walker*, 458 F.3d 130, 142 (2d Cir.2006) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001) (quotation and alteration marks omitted)). Where a claim has been "adjudicated on the merits," 28 U.S.C. § 2254(d), "deference [is] mandated under AEDPA," *Sellan*, 261 F.3d at 310, in the federal habeas court's review of petitioner's claim. All of Martin's claims have been adjudicated on the merits by the state courts.

## IV. Analysis of the Petition

### A. Ground One: Ineffective Assistance of Trial Counsel

#### 1. Overview of the Claim

From the time of arraignment until sentencing, Martin was assigned three attorneys. The first attorney, Nicholas Hicks, Esq. was forced to withdraw due to a conflict of interest, at which time Joseph Terranova, Esq. was assigned to represent petitioner. Attorney Terranova conducted a suppression hearing and engaged in lengthy plea negotiations. A substantial reduction in Martin's sentencing exposure resulted from Attorney Terranova's efforts.

On the morning of jury selection, the prosecutor informed the trial court that Martin had decided to accept an offer to (1) plead guilty to first degree attempted murder under Indictment No. 01679–2005, *and* (2)(a) either plead guilty to the entire indictment under 02885–2005; or (b) plead guilty to third degree criminal possession of a weapon. *See* Transcript of Plea Proceeding at 2 (hereinafter "P." followed by the page number). Defense counsel then proceeded to explain to the trial court the discussions he had with Martin and his family concerning the merits of the defense case and the options available to him. P.5. Attorney Terranova noted that he had

advised Martin that he could not win the case and had urged him to accept the plea offer and the court's commitment to concurrent sentences under both indictments. P.6, 8, 10. Trial counsel also explained that he told petitioner that he "feels so strongly about this [i.e., Martin pleading guilty] because he doesn't want to see [Martin] spend the rest of his life in jail." P.13.

Martin then entered a guilty plea to both indictments.

Two months later on July 11, 2006, Martin, represented by a new attorney, John Nuchereno, Esq., appeared in court and argued his motion to withdraw his guilty plea. Notably, trial counsel prefaced his arguments by stating that he had told Martin how fortunate he was to have had "an able, experienced and dedicated attorney" like Terranova, and that no matter what Martin thought, he (Attorney Nuchereno) felt that Attorney Terranova had obtained the best result. Attorney Nuchereno explained that he told Martin that he agreed with the advice Attorney Terranova had given petitioner. Transcript of Motion to Withdraw Plea at 2, 3 (hereinafter "MW." followed by the page number).

In arguing the motion, counsel conceded that the "usual" grounds for withdrawal of a guilty plea were not present, because "counsel was not ineffective, defendant was not uninformed, there was no coercion by counsel, the prosecutor or the court, and there was no buyer's remorse." MW.6. In denying the motion, the court stated that it believed that Attorney Terranova's comment that the case was "indefensible" referred to his chances of securing an acquittal. Finally, the trial court noted that Martin was facing serious charges and "sometimes bluntness is needed to convey ramifications" of such circumstances. MW.20.

### 2. Petitioner's claim of ineffective assistance is without merit.

#### a. The *Strickland* Standard

To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant "must demonstrate (1) that his attorney's performance 'fell below an objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir.2009) (quoting). A habeas petitioner, under AEDPA, must clear an additional hurdle by demonstrating that the state court's application of *Strickland* was objectively unreasonable. *Id.; see also Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard.").

To establish deficient performance, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689, 104 S.Ct. 2052. The burden is on the defendant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. *Accord Harrington*, —— U.S. at ——, 131 S.Ct. at 787.

With respect to prejudice, the Supreme Court has explained,

a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.,* at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.,* at 687, 104 S.Ct. 2052.

*Harrington,* —— U.S. at ——, 131 S.Ct. at 788.

### b. Analysis of Petitioner's Claim Under AEDPA and *Strickland*

■ Under the first prong—the performance prong—the inquiry is "contextual" and "asks whether defense counsel's actions were objectively reasonable considering all the circumstances." *Wilson,* 570 F.3d at 501 (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In determining what constitutes objective reasonableness, reviewing courts look for guidance to " '[p]revailing norms of practice as reflected in American Bar Association standards.' " *Purdy v. United States,* 208 F.3d 41, 44 (2d Cir.2000) (a post-AEDPA 28 U.S.C. 2255 motion to vacate) (citing *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). Among the "basic duties" of a defense attorney are the "duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

The professional norms of conduct "provide at least two benchmarks for the representation of a client who is deciding whether to accept a plea offer." *Purdy,* 208 F.3d at 44. In particular, the Model Rules of Professional Conduct provide that a "lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Purdy,* 208 F.3d at 44 (Model Rules of Professional Conduct Rule 1.4(b) (1995)). When a plea offer is extended to counsel's client, that attorney's " 'knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.' " *Id. United States v. Gordon,* 156 F.3d 376, 380 (2d Cir.1998) (alteration omitted). If follows that defense counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Id.* Closely correlated to that duty is that "defense counsel *'must give* the client the benefit of counsel's professional advice on this crucial decision' of whether to plead guilty." *Id.* (quoting *Boria v. Keane,* 99 F.3d 492, 497 (2d Cir. 1996) (emphasis supplied)).

Here, Martin's counsel who represented him at the time of the plea, Attorney Terranova, fulfilled the above-described duties, and indeed went above and beyond them. *Cf. Boria,* 99 F.3d at 497. In *Boria,* where the defendant rejected the plea offer, trial counsel, who was found ineffective, "never gave his client *any* advice or suggestion as to how to deal with the People's offered plea bargain." *Carrion v. Smith,* 549 F.3d 583, 591 n. 4 (2d Cir.2008). If Attorney Terranova had failed to explain the sentencing exposure Martin faced upon a guilty verdict and the demonstrable weaknesses in the defense case, he would have been derelict in his duties under *Strickland* and the Sixth Amendment. Martin's allegations seem to be nothing more than a case of "buyer's remorse," as his third attorney pointed out. Simply

because Martin did not like counsel's advice does not mean that it was deficient, much less unreasonable in light of prevailing professional norms.

Martin has failed to demonstrate that counsel performed in an objectively unreasonable manner in advising him strongly to take a favorable plea agreement. Because he cannot fulfill the performance prong of *Strickland*, there is no need for the court to consider prejudice. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

Martin has not demonstrated that the state court incorrectly applied *Strickland* or unreasonably applied *Strickland*. Thus, under any standard of review, his claim must fail.

### 3. Petitioner's claim of an involuntary plea is without merit.

#### a. Standard For Determining the Validity of a Guilty Plea

■ The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Adams*, 448 F.3d 492, 497 (2d Cir.2006) (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005)); *accord Godinez v. Moran*, 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). Thus, the standard is well-established for determining whether a guilty plea passes constitutional muster: "[W]hether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

■ Where a defendant is represented by counsel at the plea, and enters the plea based upon counsel's advice, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* (citations omitted). As discussed above, I have determined that trial's counsel's advice concerning the advantageousness of the plea was well within the range of competence demanded by attorneys in criminal cases.

■ A conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus. *McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *see also United States v. Simmons*, 164 F.3d 76, 79 (2d Cir.1998). "[N]ot every disagreement with defense counsel amounts to a conflict of interest. [I]t is to be expected that counsel will often be placed in the difficult position of having to comment on an asserted disagreement with her client, if only to inform the court as to whether she believes that she can continue the representation." *United States v. Davis*, 239 F.3d 283, 286 (2d Cir.2001) (quotations omitted). A "mere accusation of coercion, without more, is sufficient to create a conflict of interest." *Id.* (citation omitted).

■ Martin claims that his plea was involuntary because it was based on trial counsel's allegedly disloyal and incorrect advice that Martin would be unable to secure an acquittal. In this regard, the Supreme Court has stated:

> In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible?

Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

*McMann v. Richardson,* 397 U.S. at 769–70, 90 S.Ct. 1441. "That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." *Id.* Significantly, the Supreme Court also noted, "a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession." *Id.* at 770, 90 S.Ct. 1441.

Here, trial counsel was fully familiar with the facts of the case. First, it bears emphasizing that Martin's confession had properly been found admissible. Thus, a jury would have heard this highly incriminating evidence that Martin had confessed to shooting the victim, with whom he had enjoyed a long standing relationship. P.3, 5. *See Bruton v. United States,* 391 U.S. 123, 140, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (White, J., dissenting) ("[T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so.") (quoted with approval in *Parker v. Randolph,* 442 U.S. 62, 72–73, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979)) ("[O]ne can scarcely imagine evidence more damaging to his defense than his own admission of

guilt."), *abrogated on other grounds by Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987).

Second, the trial court had committed to imposing a concurrent sentence of 15 years on both indictments, and the prosecution had agreed to dismiss certain charges pending against Martin in Buffalo City Court. Had Martin proceeded to trial and been convicted, he risked incurring the statutory maximum term of imprisonment and the possibility of consecutive sentences. Thus, I agree with Respondent that any lawyer who failed to highlight and explain the significance of facts to Martin's attention and, consequently, to urge acceptance of a plea bargain calling for minimum *concurrent* sentences, clearly would have been derelict in his duties.

In short, Martin's claims of coercion are singularly unpersuasive. In light of the entire circumstances of Martin's guilty plea, it was a knowing, intelligent, and voluntary decision made with the benefit of counsel's competent advice.

## V. Motion to Stay the Petition

■ Martin asserts that a stay-and-abeyance order should be issued so that he may go back to state court to present and exhaust a claim of ineffective assistance of trial counsel based upon alleged "newly discovered evidence" of "matters outside of the record." Martin asserts that "trial counsel failed to challenge the probable cause of petitioner's arrest by not requesting a *Dunaway* hearing based upon the fact that an un-identified person provided police with petitioner's name" which "led police to the photo that the victim used to initially identify petitioner." Martin asserts that as the result of a Freedom of Information Law ("FOIL") request, he "discovered that the photo used in the photo array that the victim identified petitioner from came from a court ordered sealed file, and no record exist[s] to sup-

port the fact that any motion was filed to a superior court to unseal the file which is required pursuant to CPL § 160.50." Petitioner's Motion to Stay at 2. Martin reasons that had counsel challenged the arrest, this would have led to any statements made by him being suppressed as a result of an illegal arrest. *Id.*

Martin cannot meet the standard set forth in *Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), for determining whether it would be a proper exercise of the district court's discretion to issue a stay-and-abeyance in a post-AEDPA habeas proceeding. The Supreme Court stated in *Rhines* that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had [1] good cause for his failure to exhaust, [2] his unexhausted claims are potentially meritorious, and [3] there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." 544 U.S. at 278, 125 S.Ct. 1528. On the other hand, the Supreme Court explained, even if a petitioner had "good cause" for the failure to exhaust the claims first, it would be an abuse of discretion to grant a stay when the claims are "plainly meritless." *Id.* at 277, 125 S.Ct. 1528 (citing 28 U.S.C. § 2254(b)(2)).

In this case, it clearly would be an abuse of discretion for the Court to invoke the stay-and-abeyance procedure because Martin's proposed amended claim is not "potentially meritorious" and is, instead, a "plainly meritless" habeas claim.

■■■ In *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), the Supreme Court noted that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett,* 411 U.S. at 267, 93 S.Ct. at 1608. Thus, a guilty plea "foreclose[s] direct inquiry into the merits of claimed antecedent constitutional violations." *Tollett,* 411 U.S. at 266, 93 S.Ct. at 1607. "Although a defendant's guilty plea forecloses subsequent claims relating to the deprivation of constitutional rights occurring prior to the guilty plea, including illegal searches and seizures, *Norman v. McCotter,* 765 F.2d 504, 511 (5th Cir.1985), the defendant is not precluded from making a Sixth Amendment claim based on counsel's failure to competently litigate the Fourth Amendment claim. *Kimmelman v. Morrison,* 477 U.S. 365, 378, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)." *United States v. Garcia,* No. 92–5712, 996 F.2d 305, 1993 WL 241530, at *3 (5th Cir. June 17, 1993).

Nevertheless, Martin's claim, although creative, is not viable. It appears to be based upon *People v. Patterson,* 78 N.Y.2d 711, 579 N.Y.S.2d 617, 587 N.E.2d 255 (N.Y.1991), in which the defendant argued that trial court was required to suppress the witness' photo array identification of him based upon a photograph obtained by the police in connection with an earlier, unrelated incident on which the charges had been dropped and the file ordered sealed pursuant to C.P.L. § 160.50, even though the photograph should have been returned to defendant in accordance with the sealing statute.[1] The defendant in

---

1. C.P.L. § 160.50 provides, in pertinent part, as follows:

"Upon the termination of a criminal action or proceeding against a person in favor of such person ... unless the district attorney ... demonstrates to the satisfaction of the court that the interests of justice require otherwise ... the court wherein such criminal

*Patterson* argued that the use of his photograph in violation of C.P.L. § 160.50 implicated substantial constitutional rights and tainted the identification procedure such as to warrant suppression of any in-court identification testimony by the eyewitness. *Patterson,* 78 N.Y.2d at 714, 579 N.Y.S.2d 617, 587 N.E.2d 255. Although the New York Court of Appeals found no authorization in that statute for the use in a law enforcement agency's investigatory procedures of a photograph retained in violation of that statute, such a statutory violation such as this did not warrant suppression of the identification testimony because it did not infringe upon any constitutional right sufficient to warrant invocation of the Fourth Amendment's exclusionary rule. *Id.* The *Patterson* court explained,

> Defendant does not allege that the identification procedure was conducted under impermissible circumstances; he argues only that the use of the challenged photograph was improper and requires suppression. Moreover, he makes no claim that the taking of the photograph originally was in any way illegal. Thus, he does not challenge the reliability of the identification process, as indeed he could not inasmuch as the reliability of that process was unaffected by the use of the photograph.

*Id.* Absent from Martin's motion papers are any allegation that the identification procedure was unduly suggestive or that the original taking of the photograph from the sealed file was in any illegal, thereby defeating a claim of unreliability of the identification itself. Thus, Martin's trial counsel did not have a viable argument based upon the violation of C.P.L. § 160.50, and thus Martin could not have been prejudiced in his suppression hearing by counsel's failure to assert such a claim. Martin's proposed claim of ineffective assistance of trial counsel is not "potentially meritorious". Therefore, the Court must conclude that it would be an abuse of discretion to invoke the stay-and-abeyance procedure in this case.

## VI. Conclusion

For the reasons set forth above, Petitioner Floyd Martin's request for a writ of habeas corpus is denied and the **petition (Docket No. 1) is dismissed.**

Martin's **motion for a stay (Docket No. 8) is denied with prejudice-.**

Martin's **motion for an extension of time to file a memorandum of law in reply to Respondent's opposition (Docket No. 9) is granted** *nunc pro tunc* and his reply memorandum of law (**Docket No. 12) is deemed timely filed.**

Because Martin has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

---

action or proceeding was terminated shall enter an order, which shall immediately be served by the clerk of the court upon the commissioner of the division of criminal justice services and upon the heads of all police departments and other law enforcement agencies having copies thereof, directing that: "(a) every photograph of such person and photographic plate or proof, and all palm-prints and fingerprints taken or made of such person pursuant to the provisions of this article ... shall forthwith be returned to such person, or to the attorney who represented him at the time of the termination of the action or proceeding".
N.Y.Crim. Proc. Law § 160.50.